| JIONNI CONFORTI | Civ. No. 2:17-cv-00050-CCC-CLW |
| Plaintiff, | |
| v. | **OPINION & ORDER** |
| ST. JOSEPH'S HEALTHCARE SYSTEM, INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Jionni Conforti's Motion to Quash Subpoenas and For a Protective Order. (ECF No. 69). The Court heard oral argument on June 20, 2019, and, for the reasons set forth below, Plaintiff's Motion is **GRANTED** in part and **DENIED** in part.

## II. BACKGROUND

On January 5, 2017, Plaintiff Jionni Conforti ("Conforti") filed this action against Defendants St. Joseph's Healthcare System, Inc. ("SJHS"), St. Joseph's Hospital and Medical Center (d/b/a St. Joseph's Regional Medical Center) ("SJRMC"), and Father Martin D. Rooney, who serves as St. Joseph's Health Care System's Director of Pastoral Care and Mission Services.

This action arises out of Defendants' allegedly unlawful refusal to schedule a hysterectomy for Conforti at SJRMC for discriminatory reasons. The following facts are taken from the Complaint. In June 2014, Dr. Ian Tang diagnosed Conforti with gender dysphoria, and Conforti started gender-confirming hormone therapy under Dr. Tang's care. (Compl. ¶ 55). In October 2014, Conforti underwent a double mastectomy at a hospital in Texas. (*Id.* ¶ 56). Thereafter, in consultation with Dr. Tang, Conforti decided to seek a total hysterectomy and began the process of finding a gynecological surgeon to perform the procedure. (*Id.* ¶¶ 57-58). Conforti was ultimately referred to Dr. Brian Day, a surgeon and obstetrician at Totowa OB/GYN with admitting privileges at SJRMC. (*Id.* ¶¶ 58-59).

Conforti obtained referral letters recommending a hysterectomy as a medically necessary treatment from Dr. Ian Tang and therapist Rissy Batista. (*Id.* ¶¶ 61-63). Conforti then scheduled a June 16, 2015 consultation with Dr. Day. (*Id.* ¶ 64). During this consultation, Dr. Day informed

Conforti that Defendant Father Rooney, Director of Mission Services at SJHS, "would not allow [the] surgery to be scheduled at SJHS's facilities, as the surgery was being performed for the purposes of 'gender reassignment.'" (*Id.* ¶ 67). Father Rooney subsequently sent an e-mail to Conforti stating, "This is to follow up to your e-mail inquiring about scheduling a total hysterectomy here at St. Joseph's to remove all female parts based on the medical necessity for Gender Reassignment. This is to inform you that as a Catholic Hospital we would not be able to allow your surgeon to schedule this surgery here at St. Joseph's." (*Id.* ¶ 69). Thus, Dr. Day did not perform Conforti's hysterectomy at SJRMC, and Conforti ultimately underwent a hysterectomy with Dr. Charles Haddad at Mountainside Hospital in September 2015. (Pl.'s Br., ECF No. 69-1, at p. 10).

Conforti alleges that Defendants denied him "the ability and opportunity to schedule his hysterectomy at SJRMC because it was related to the medically necessary treatment of gender dysphoria," and thus discriminated against him on the basis of his "sex, nonconformity with sex stereotypes, gender identity, and transgender status." (Compl., ¶¶ 88, 99). On the basis of this alleged discrimination, Conforti brings claims under Section 1557 of the Affordable Care Act and the New Jersey Law Against Discrimination ("NJLAD"). Conforti seeks multiple forms of relief, including a declaratory judgment that Defendants violated Section 1557 and NJLAD, a permanent injunction modifying Defendants' practices and policies, costs and fees, and compensatory and punitive damages.

The last category of relief – compensatory damages for emotional distress – is at the crux of the parties' dispute over the proper scope of discovery from Conforti's medical providers. In the Complaint, Conforti alleges that he has "suffered emotional distress, humiliation, degradation, embarrassment, emotional pain and anguish, violation of his dignity, loss of enjoyment of life, and other compensatory damages, in an amount to be established at trial." (Compl., ¶¶ 99, 101). Conforti seeks compensatory damages for these emotional harms. (*Id.* at p. 25).

On February 15, 2019, Conforti filed his Motion to Quash Subpoenas and For a Protective Order. Conforti seeks two forms of relief in his Motion: (1) an order quashing Defendants' subpoenas to Conforti's medical providers. These subpoenas seek depositions of six medical providers and updated medical records; and (2) a protective order preserving Conforti's Attorneys

2

Eyes' Only ("AEO") designation for eighteen pages of his medical records and the redaction of one note contained in those medical records.[1]

Defendants oppose Conforti's Motion in its entirety. Defendants argue that the contested subpoenas fall within the scope of Federal Rule of Civil Procedure 26(b)(1), because these providers' testimony and updated medical records are highly relevant to Conforti's allegations and his damages claim for emotional distress. In their Opposition, Defendants identified two additional medical providers – OB/Gyn Dr. Diana Vitale and neurologist Dr. Avery Katz - whose depositions they now seek on the same basis as the original six providers. (Def.'s Opp., ECF No. 73, at p. 13). Defendants also oppose Plaintiff's AEO designations.

### III.  DISCUSSION

LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) allows a party to obtain information concerning "any matter, not privileged, which is relevant to the subject matter involved in the pending action." *Sanofi-Aventis v. Sandoz, Inc.*, No. 03-6025, 2005 WL 6714281, at *1 (D.N.J. 2011). The party seeking discovery must demonstrate that the discovery request is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 26(b)(1), the Court may limit discovery when, among other things, "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Under Rule 26(c), the Court may, "for good cause," issue a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id.*

"Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b)." *Gov't Employees Ins. Co. v. Trnovski*, No. CV 16-4662 (CCC), 2018 WL 5281424, at *2 (D.N.J. Oct. 23, 2018) (citing *OMS Investments, Inc. v. Lebanon Seaboard Corp.,* 2008 WL 4952445 (D.N.J. Nov. 18, 2008)). Under Rule 45(3)(A), "the

---

[1] Plaintiff redacted one line of sensitive medical information in one medical record (Fitzgerald 016 and 061) and, as part of his Motion, submitted the redacted note for *in camera* review. (Pl.'s Br., ECF No. 69-1, at p. 23). After reviewing the redacted statement *in camera*, the Court ruled on the record that the statement is irrelevant and will not be subject to discovery. (Transcript, at p. 56:3-5).

3

court…must quash or modify a subpoena that….requires disclosure of privileged or other protected matter" or "subjects a person to an undue burden." *Id.*

Here, Conforti moves to quash third-party subpoenas issued to his medical providers. Generally, courts afford greater protection to non-parties in discovery, and nonparty subpoenas must meet a higher standard of relevance than subpoenas directed toward parties. *See, e.g., Chazanow v. Sussex Bank*, No. 11-1094, 2014 WL 2965697, at *3 (D.N.J. July 1, 2014); *Kelley v. Enhanced Recovery Co., LLC*, no. CV 15-6527, 1016 WL 8673055 at *2 (D.N.J. Oct. 7, 2016). Because the third-party subpoenas here relate to Conforti's medical information and Conforti claims his medical information is privileged, he has standing to move to quash the subpoenas. *DIRECTV, Inc. v. Richards*, No. CIV. 03-5606 (GEB), 2005 WL 1514187, at *1 (D.N.J. June 27, 2005) ("A party lacks standing to seek the modification or quashing of a subpoena upon a third party unless the party claims a personal privilege is implicated."). Defendants do not contest Conforti's standing to bring this Motion.

### A. DEPOSITIONS OF MEDICAL PROVIDERS

Conforti seeks to block the depositions of six medical providers who were subject to Defendants' initial round of subpoenas: (1) Dr. Ian Tang, (2) Dr. Joseph Vitale and (3) Nurse Practitioner Mary Vitale, (4) Dr. Charles Haddad, (5) Rissy Batista, and (6) Vincent Fitzgerald. Importantly, Conforti has already produced medical records from these six providers for January 11, 2011 through August 23, 2018. Conforti also objects to Defendants' proposed depositions of two newly identified providers, OB/Gyn Dr. Diana Vitale and Dr. Avery Katz.

The Court will permit the depositions of the following providers: Dr. Ian Tang, Dr. Joseph Vitale, and Rissy Batista. These providers' treatment of Conforti is directly intertwined with the allegations in the Complaint concerning his gender dysphoria diagnosis, his subsequent course of treatment, and the emotional distress that he suffered upon Defendants' denial of his hysterectomy. Moreover, these depositions have a reasonable temporal scope, because these three providers treated Conforti in the leadup to Defendants' alleged wrongdoing and in its immediate aftermath.

**Dr. Ian Tang**

Dr. Tang is an endocrinologist who, together with a team at Apicha Community Healthcare, began providing care to Conforti in May or June of 2014. (Transcript of Oral Argument, at pp.

18:12-19, 19:8-10). Conforti argues that Dr. Tang's deposition – as well as the other providers' depositions – is irrelevant, invasive, and imposes an undue burden on Conforti. According to Conforti, neither Dr. Tang's nor any other provider's testimony will shed light on the question of Defendants' liability, which turns on whether Defendants denied Plaintiff the hysterectomy because of his transgender identity. Conforti rightly notes that Defendants do not contest his gender dysphoria diagnosis, and there is no allegation that Plaintiff's medical history was a factor in Defendants' decision to deny Plaintiff's hysterectomy. (Pl.'s Br., ECF No. 69-1, at p. 14-15).

Nevertheless, as the Complaint's numerous references to Dr. Tang make clear, Dr. Tang's treatment of Plaintiff lies at the heart of the factual allegations in this matter. Dr. Tang diagnosed Plaintiff with Gender Dysphoria and oversaw Plaintiff's gender-confirming hormone therapy. (Compl. ¶ 55). Dr. Tang recommended that Plaintiff undergo a complete hysterectomy and wrote a referral letter for the procedure, which described a total hysterectomy as "necessary and highly beneficial for Mr. Conforti's well-being." (*Id.* ¶¶ 57, 63). Given Dr. Tang's close involvement with Plaintiff's gender dysphoria treatment, his testimony falls within the broad scope of discoverable evidence under Rule 26(c). It would be inappropriate to adopt Plaintiff's narrow view of relevance at this stage and cut off Defendants' ability to elicit potentially relevant testimony concerning Plaintiff's gender dysphoria treatment and emotional distress.

**Dr. Joseph Vitale**

Defendants are likewise entitled to depose Dr. Joseph Vitale. Dr. Vitale, a primary care doctor affiliated with West Paterson Family Medical Practice, treated Plaintiff from early 2014 through the end of 2018. According to Defendants, Dr. Vitale took a complete medical history of Plaintiff, made a mental health referral in 2014, and prescribed Plaintiff antidepressants and anxiety medications both before and after Plaintiff's hysterectomy. (Def.'s Opp., ECF No. 73, at p. 12).

Conforti disputes the relevance of Dr. Vitale's testimony, largely for the same reasons as Dr. Tang's testimony. Additionally, Conforti contends that because Dr. Vitale is "not [a] mental heath care provide[r]," he has "no insight as to [Plaintiff's] mental state at the time of this incident" and cannot testify to Conforti's emotional distress. (Pl.'s Reply, ECF No. 76, at p. 11).

According to Defendants, Dr. Vitale is "uniquely positioned" to provide relevant testimony because he "treated [Plaintiff] before and after the request[ed] hysterectomy." (Transcript, at p.

5

48:1-16). The Court agrees. Moreover, as Plaintiff himself acknowledges, because the Vitales are not mental health care providers, the incursion on Plaintiff's privacy interests is less significant.

In addition to Dr. Vitale, Defendants seek to depose Nurse Mary Vitale, who is also affiliated with the West Paterson Family Medical Practice. (Def.'s Opp., ECF No. 73, at p. 12). There is no indication that Mary Vitale's testimony will have any marginal benefit beyond Dr. Vitale's testimony. Defendants contend in a general manner that Mary Vitale discussed Plaintiff's gender dysphoria "shortly before" Plaintiff sought a hysterectomy as St. Joseph's. (*Id.*). Given that this topic will likely be covered by Dr. Tang and Dr. Vitale's depositions, the Mary Vitale subpoena is cumulative and unduly burdensome.

**Rissy Batista**

Rissy Batista is a therapist and mental health clinician. Batista began treating Plaintiff in March 2015 and wrote a referral letter in late May or early June 2015 recommending a total hysterectomy as a medically necessary treatment. (Compl. ¶ 62). Medical records indicate that Batista diagnosed Plaintiff with gender dysphoria and may have diagnosed Plaintiff with Major Depressive Disorder and Generalized Anxiety Disorder. (Def.'s Opp., ECF No. 73 at p. 11). Although neither Plaintiff nor Defendants could specify when Plaintiff ended his treatment with Batista, Plaintiff appears to have continued seeing her for some period after St. Joseph's denial of the hysterectomy. (Transcript, at pp. 48:19-25, 49:1-9).

Plaintiff moves to quash the Batista deposition on several grounds. First, Plaintiff objects to the deposition as irrelevant and "oppressive," because "Conforti's gender dysphoria diagnosis is not at issue in this case" and "[Batista's] mental health treatment is separate and distinct from the 'garden variety' damages asserted" in this case. (Pl.'s Br., ECF No. 69-1, at p. 18). Second, Plaintiff claims that Batista's testimony is protected by the psychotherapist-patient privilege. (*Id*). According to Plaintiff, by limiting his damages to "garden variety" emotional distress, he has not waived this privilege.

Defendants strongly contest Plaintiff's characterization of his emotional distress damages as "garden variety." Defendants argue that the complexity of Plaintiff's mental health history reaches beyond the realm of routine emotional distress, and that Plaintiff has waived the patient-

psychotherapist privilege by putting this complicated mental health history at issue in this case. (Def.'s Opp., ECF No. 73, at p. 16).

"It is axiomatic…. that communications between a psychotherapist and a patient in the course of diagnosis or treatment are privileged and therefore protected from compelled disclosure under Federal Rule of Evidence 501." *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 219 (D.N.J. 2000) (citing *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996)). However, the privilege is not absolute. The *Jackson* court adopted the so-called "broad view" of waiver and held that "a plaintiff waives the psychotherapist-patient privilege by placing his/her mental or emotional condition at issue[.]" *Id.* at 225. When evaluating a psychotherapist-patient privilege claim, the court must balance the plaintiff's interest in the confidentiality of the patient-psychotherapist relationship with the defendants' need to "moun[t] an adequate defense" to emotional distress claims with access to "all the relevant evidentiary materials." *Id.*

The Court recognizes that, unlike the plaintiff in *Jackson*, Conforti does not bring an intentional infliction of emotional distress cause of action and has not expressed an intention to introduce mental health records at trial or present evidence that Defendants' actions exacerbated diagnosed mental health conditions. When pressed on the contours of Plaintiff's damages claim at oral argument, Plaintiff's counsel represented that Plaintiff's emotional distress testimony would be limited to the "standard…damages" sought in any discrimination case, such as being "angry," "upset," "humiliated," and fearing recurring discrimination if Plaintiff were to return to St. Joseph's. (Transcript, at p. 31:6-24).

However, the broad view of the waiver adopted in *Jackson* compels the conclusion that Conforti has waived the psychotherapist-patient privilege as to his treatment with Batista. Plaintiff has "manifest[ed] an unmistakeable intent to inject [his]…symptoms and diagnoses into the underlying litigation." *Jackson*, 193 F.R.D. at 226. Conforti references his mental health issues throughout the Complaint. Conforti alleges that he has experienced depression since 2004 and realized in 2014 that his depression was caused by gender dysphoria. (Compl., ¶¶ 52, 54). Conforti further alleges that he "became deeply depressed" and felt "great anxiety" when St. Joseph's denied the hysterectomy. (*Id.* ¶ 9). Moreover, at his deposition, Conforti testified that he felt "emotional distress," "hurt," "shame," and "of course some depression" after St. Joseph's did not permit Dr. Day to perform Plaintiff's hysterectomy. (Def.'s Opp., ECF No. 73, at p. 15).

Under the *Jackson* balancing test, quashing Batista's deposition would work an undue prejudice on Defendants. At the discovery stage, Defendants are entitled to pursue relevant inquiries into these complex emotional and psychological factors, which cannot be neatly reduced to "garden variety" distress at this stage. Moreover, as the Complaint spells out, Conforti suffered from depression and anxiety long before Defendants denied him the hysterectomy in June 2015. Without Batista's testimony, Defendants would be hamstrung in exploring other contributing factors to Conforti's emotional distress and defending themselves against Conforti's allegation that Defendants' discrimination was the driving cause of Plaintiff's emotional damages, whether "garden variety" or otherwise.

REMAINING PROVIDERS

The depositions of the four remaining medical providers are overly broad, cumulative, and unduly burdensome. Plaintiff has already produced seven years of medical records from these providers. Defendants have failed to demonstrate that the benefits of any additional information gleaned from these deponents would outweigh the incursion on Plaintiff's privacy interests and the burden on both Plaintiff and his medical providers.

**Dr. Charles Haddad**

Dr. Charles Haddad performed Plaintiff's hysterectomy at Mountainside Hospital in September 2015. (Pl.'s Br., ECF No. 69-1, at p. 10). Dr. Haddad does not appear to have treated Plaintiff beyond performing the hysterectomy. Defendants argue that "information to be elicited at [Dr. Haddad's] deposition [is] clearly relevant to Plaintiff's claims." (Def.'s Opp., ECF No. 73, at p. 22). Specifically, Defendants seek Haddad's testimony about any "tests" that Dr. Haddad performed prior to the hysterectomy, as well as the medical reasons that Plaintiff presented to Haddad for the hysterectomy. (Transcript, at p. 51:10-13). According to Defendants, if Conforti told Dr. Haddad that he was seeking a hysterectomy for a reason other than the one given to St. Joseph's, that inconsistency would be "relevant" to Plaintiff's claims. (*Id.* at p. 51:15-22).

The Court grants Plaintiff's request to quash this subpoena. Defendants already have access to all of Dr. Haddad's medical records, and Conforti testified at his deposition that he sought a hysterectomy from Dr. Haddad for the "sole reason of treating his gender dysphoria." (Transcript,

at p. 52:1-2). Defendants have not articulated, either in their briefing or at oral argument, any need to further probe Plaintiff's treatment with Dr. Haddad by deposing him.

**Dr. Diana Vitale** and **Dr. Avery Katz**

In their Opposition to Plaintiff's Motion, Defendants, for the first time, sought to depose Dr. Diana Vitale and Dr. Avery Katz. Dr. Diana Vitale is an OB/GYN who Conforti saw for one visit when he decided to pursue a hysterectomy. (Transcript, at p. 40:20-21). According to Conforti, he did not return to Dr. Vitale after his sole visit because "[s]he wanted extra tests that Mr. Conforti thought….weren't necessary," and Conforti "didn't like the [initial] relationship" with her. (*Id.* at p. 41:10-15). Given Conforti's limited interaction with this provider, Defendants have failed to demonstrate that her deposition is proportional to the needs of this case, especially in light of the fact that Defendants are in possession of the medical records from this visit.

Neurologist Dr. Avery Katz treated Conforti for one or two visits in May 2014. Defendants indicate that they want to take Dr. Katz's deposition because Dr. Katz "prescribed [Conforti] antidepressants." (Transcript, at p. 43:21-23). However, according to Conforti, Dr. Katz treated Plaintiff for headaches and "never" provided any treatment related to gender dysphoria. (*Id.* at p. 42:10-11). Defendants have not presented any evidence, from Dr. Katz's medical records or otherwise, to dispute this. Because Dr. Katz treated Conforti for unrelated medical conditions for a very circumscribed period, Dr. Katz's deposition is neither relevant nor proportional.

**Vincent Fitzgerald**

Therapist Vincent Fitzgerald began treating Plaintiff in 2017 and continues to treat Plaintiff. Defendants argue that Fitzgerald's treatment of Plaintiff is relevant to Plaintiff's emotional distress damages, because Plaintiff testified at his deposition that he discussed his family psychiatric history, substance abuse history, and this lawsuit with Fitzgerald. (Def.'s Opp., ECF No. 73, at p. 12). Defendants also note that Fitzgerald's records "raise questions about whether Plaintiff has followed through with recommended therapy." (*Id*). As with Rissy Batista, Plaintiff asserts the psychotherapist-patient privilege over the Fitzgerald deposition. (Pl.'s Br., ECF No. 69-1, at p. 12).

The Court grants Conforti's request to quash Fitzgerald's deposition. The need to protect the confidentiality of Conforti's privileged patient-psychotherapist communications is particularly

acute here, given that Conforti continues to see Fitzgerald for therapy. Defendants will not be prejudiced without Fitzgerald's testimony. Conforti began seeing Fitzgerald more than two years after St. Joseph's denial of the hysterectomy, and any connection to Plaintiff's emotional distress damages is highly attenuated.

### B. MEDICAL RECORDS FROM JULY 1, 2018 THROUGH THE PRESENT

Plaintiff has produced medical records from January 1, 2011 through August 23, 2018. (Transcript, at p. 68:18-25). Defendants now seek updated medical records through the present day. Defendants argue that as a "practical matter," they are entitled to "updated records prior to trial" in a case with "ongoing issues." (*Id.* at p. 67:6-8). Defendants also seek updated records about the status of Conforti's ongoing treatment, if any, for emotional distress. (*Id.* at p. 67:15-17).

Defendants' request for medical records that postdate the underlying events in this case by several years is unduly burdensome and invasive. Defendants have not demonstrated the relevance of medical records for treatment that occurred upwards of three years after the alleged act of discrimination. Accordingly, Conforti's application to quash Defendants' request for updated medical records is granted.

### C. AEO DESIGNATIONS

Finally, Plaintiff moves for a protective order to preserve his Attorneys Eyes Only designation of eighteen pages of medical records.[2] (Pl.'s Br., ECF No. 69-1, at p. 23). Plaintiff argues that the AEO designations are proper under the Discovery Confidentiality Order, which allows for AEO designations of "highly sensitive…personal information, the disclosure of which is highly likely to cause significant harm to an individual." (*Id*). According to Plaintiff, the AEO records contain Conforti's most sensitive and confidential personal information.

Defendants object to Plaintiff's AEO designations, because Defendants would like to use these eighteen pages of medical records at the depositions of Plaintiff's health care providers and to disclose the records to experts. (Def.'s Opp., ECF No. 73, at p. 26). Plaintiff has no objection to Defendants disclosing AEO records to experts and third-party consultants. (Transcript, at p. 56:17-18). However, Plaintiff does object to Defendants disclosing AEO records to medical providers

---

[2] Plaintiff electronically submitted the disputed medical records under seal for the Court's review. (ECF No. 70).

who did not previously have access to those records. (*Id*. at p. 57:2-10). According to Plaintiff, if a provider learns sensitive information from the AEO records that Plaintiff chose not to share with that provider during the course of his treatment, Plaintiff's privacy interests and his trust in the confidentiality of his doctor-patient relationships will be damaged. (*Id.*).

Plaintiff's request for a protective order upholding the AEO designations of eighteen pages of medical records is denied. These records shall be designated Confidential, and Defendants are permitted to disclose the records to Dr. Ian Tang, Dr. Joseph Vitale, and Rissy Batista in connection with their depositions. Plaintiff's privacy concerns can be addressed by designating the records as Confidential, so that they are disclosed only to this limited group of medical providers and any experts retained by Defendants.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Quash Subpoenas and For a Protective Order is **GRANTED** in part and **DENIED** in part. An appropriate order follows.

**IT IS,** on this 14th day of August, 2019, hereby

**ORDERED** that Plaintiff's application to quash the depositions of Dr. Ian Tang, Dr. Joseph Vitale, and Rissy Batista is **DENIED**;

**ORDERED** that Plaintiff's application to quash the depositions of Nurse Practitioner Mary Vitale, Dr. Charles Haddad, Vincent Fitzgerald, Dr. Diana Vitale, and Dr. Avery Katz is **GRANTED**;

**ORDERED** that Plaintiff's application to quash Defendants' subpoenas for medical records from August 23, 2018 through the present is **GRANTED;**

**ORDERED** that Plaintiff's motion for a protective order preserving the AEO designations of eighteen pages of medical records is **DENIED**;

and **ORDERED** that the Clerk shall terminate ECF No. 69 upon entry of this Opinion and Order.

<u>*s/Cathy L. Waldor*</u>
**CATHY L. WALDOR**
**United States Magistrate Judge**