| JIONNI CONFORTI | |
|---|---|
| Plaintiff, | Civ. No. 2:17-cv-00050-CCC-CLW |
| v. | |
| ST. JOSEPH'S HEALTHCARE SYSTEM, INC., et al., | **OPINION & ORDER** |
| Defendants. | |

**Introduction**

This matter comes before the Court on Defendants St. Joseph's Healthcare System, Inc., St. Joseph's University Medical Center, Inc., and Father Martin D. Rooney's ("Defendants") Motion To Compel Mental Examination of Plaintiff. (ECF No. 96). The Court heard oral argument on December 3, 2019. For the reasons stated below, Defendants' Motion is **DENIED**.

**Background**

The factual background of this matter is discussed at length in the Court's August 15, 2019 Opinion and Order granting in part and denying in part Plaintiff's Motion to Quash and for a Protective Order. (ECF No. 104). This section will address the additional facts relevant to this Motion.

Defendants move to compel Plaintiff Jionni Conforti ("Plaintiff") to appear for an independent medical examination ("IME"), to be conducted by psychiatrist Donald Raymond Reeves, Jr., M.D. (Def.'s Br., ECF No. 97, at p. 12). Dr. Reeves's examination would include: "a mental status examination, a developmental history, a psychiatric history (including treatments for psychiatric and psychological conditions), a family history, an education and work history, and the history of Plaintiff's alleged gender dysphoria." (*Id.*). During the IME, Dr. Reeves would assess the extent and duration of Plaintiff's alleged emotional distress, depression and anxiety, other

1

causes of Plaintiff's mental distress aside from Defendants' refusal to perform a hysterectomy, Plaintiff's treatment for his mental health issues, Plaintiff's gender dysphoria diagnosis, and the effect of Plaintiff's hysterectomy on his gender dysphoria. (*Id.* at pp. 12-13). Defendants estimate that the IME would last four hours. (*Id.* at p. 13).

## Legal Standard

Under Federal Rule of Civil Procedure 35, the "court…may order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The court may only order such an examination upon a motion demonstrating "good cause" for the examination. *Id.* 35(a)(2)(A).

In *Schlagenhauf v. Holder*, the Supreme Court held that Rule 35 imposes a higher standard on movants than "mere relevance." 379 U.S. 104, 118, 85 S. Ct. 234, 242, 13 L. Ed. 2d 152 (1964). A party seeking to compel an IME must meet two requirements that flow from the language of Rule 35. The movant must make "an affirmative showing" that (1) the subject's condition "is really and genuinely in controversy" and (2) "good cause exists" for the examination. *Id. Schlagenhauf* directs trial courts to make a "discriminating application" of these "limitations prescribed by [Rule 35]." *Id.* at 121.

In keeping with the heightened standard for Rule 35 examinations, the Third Circuit has endorsed the five-part test in *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995) for determining if a party's mental condition is truly "in controversy." *Kuminka v. Atl. Cty. New Jersey*, 551 F. App'x 27, 29 (3d Cir. 2014). Under the *Turner* test, a garden variety emotional distress claim is "insufficient to place the plaintiff's mental condition 'in controversy' for purposes of Rule 35(a)." *Id.* (quoting *Bowen v. Parking Auth. Of City of Camden*, 214 F.R.D. 188, 193 (D.N.J. 2003)). The movant must demonstrate that, in addition to an emotional distress claim, one

2

or more of the following factors is present: (1) "a cause of action for intentional or negligent infliction of emotional distress;" (2) "an allegation of a specific mental or psychiatric injury or disorder;" (3) "a claim of unusually severe emotional distress;" (4) "plaintiff's offer of expert testimony to support a claim of emotional distress;" and/or (5) "plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." *Id.* (holding that a Rule 35 examination was warranted because plaintiff "explicitly included a cause of action for intentional infliction of emotional distress in her complaint").

## Discussion

The Court must first determine if Plaintiff has placed a mental health condition "in controversy" under the *Turner* test. Plaintiff does not assert a cause of action for intentional or negligent infliction of emotional distress, nor does he allege a claim of unusually severe emotional distress. Plaintiff does not plan to offer expert testimony to support his emotional distress damages. Therefore, out of the five *Turner* factors, only two are potentially applicable here: (1) "an allegation of a specific mental or psychiatric injury or disorder" and (2) "plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." Defendants argue that Plaintiff has placed his mental condition "in controversy" by alleging that he suffers from three specific psychiatric disorders – depression, anxiety, and gender dysphoria. (Def.'s Br., ECF No. 97, at pp. 14-15).

The Court will first address whether Plaintiff has placed his depression and anxiety diagnoses "in controversy." Within the context of the broad relevance standard under Federal Rule of Civil Procedure 26 and the broad waiver rules for the patient-psychotherapist privilege, the Court previously found that Defendants were entitled to explore the extent and causes of Plaintiff's emotional distress by deposing three of his medical providers. (Opinion and Order, ECF No. 104,

3

at p. 8). The same logic does not extend to Rule 35 examinations, which are subject to a separate and more exacting standard than other forms of discovery. Plaintiff's history of depression and anxiety, no matter how extensive or complicated, cannot on its own sustain Defendants' burden under Rule 35.

Plaintiff has not placed his depression and anxiety "in controversy" within the meaning of Rule 35. Plaintiff has repeatedly reiterated that his damages will be limited to "standard" emotional distress, and Plaintiff has represented that he will not introduce evidence that Defendant's conduct caused or exacerbated any clinical conditions. (Pl.'s Opp., ECF No. 100, at p. 12; Transcript of Oral Argument, at pp. 19:2-25, 20:1). Plaintiff's characterization of his damages claim is consistent with the language in the Complaint, which contains standard language concerning the emotional distress damages typically sought in discrimination cases. (Compl., ¶¶ 99, 101). At his deposition, Plaintiff described his mental distress at the time Defendants denied the hysterectomy in 2015 in general terms: "I was upset. There was definitely emotional distress and hurt...shame and of course some depression." (Ex. A to Mayer Declaration, ECF No. 97-2, at p. 162:8-11).

Defendants argue that courts are particularly inclined to find that a plaintiff's mental condition is in controversy when the plaintiff alleges that his emotional distress is ongoing. (Def.'s Br., ECF No. 97, at pp. 14, 16-17). However, Plaintiff has testified about his ongoing emotional distress in a colloquial manner. When asked about his "emotional condition" on the day of the January 2019 deposition, Plaintiff stated "[i]t still upsets me what happened. I don't think it's right. It still hurts me." (Ex. A to Mayer Declaration, ECF No. 97-2, at p. 163:1-2). Courts have consistently found that an allegation of ongoing mental distress exposes a plaintiff to a Rule 35 examination only when the plaintiff intends to seek damages for symptoms or conditions that are more severe than general emotional distress. *See, e.g., McLaughlin v. Atl. City*, 2007 WL 1108527,

4

at *5; *Bowen*, F.R.D. 188 at 193; *Montana v. Cty. of Cape May Bd. of Freeholders*, No. CIV. 09-0755 NLH/JS, 2013 WL 5724486, at *6 (D.N.J. Oct. 18, 2013).

Defendants similarly have not demonstrated that Plaintiff's gender dysphoria diagnosis is "in controversy" for purposes of adjudicating Plaintiff's discrimination claims and Defendants' affirmative defenses. Plaintiff correctly notes that at no point – either at the time that Defendants denied the hysterectomy or in the course of their defense of this action – have Defendants asserted that they refused to perform a hysterectomy because Plaintiff does not suffer from gender dysphoria. (Pl.'s Opp., ECF No. 100, at p. 20). Rather, the liability determination in this matter turns on whether Defendants denied Plaintiff treatment for impermissible discriminatory reasons – namely, because the Ethical and Religious Directives prevented Defendants from performing a hysterectomy for gender reassignment purposes. (Transcript of Oral Argument, at pp. 15:9-16:15).

At oral argument, Defendants suggested that whether Plaintiff's hysterectomy was truly medically necessary is a "threshold issue," because Plaintiff "would have no standing if there was no medical necessity." (Transcript, at p. 23:14-18). This appears to be a novel argument – in their Answer, Defendants assert that Plaintiff lacks standing because his subsequent hysterectomy renders his claim for injunctive relief moot, not because a hysterectomy was not medically necessary to treat Plaintiff's gender dysphoria. (Def.'s Answer, ECF No. 8, at p. 14).

Even if Plaintiff had placed his depression, anxiety, or gender dysphoria in controversy here, Defendants' Rule 35 application still fails for lack of good cause. Defendants state that Plaintiff's complex history of depression and anxiety, his gender dysphoria diagnosis, and potential contributing factors to Plaintiff's emotional distress other than Defendants' conduct are "highly relevant" to both liability and damages. (Def.'s Br., ECF No. 97, at p. 20). *Schlagenhauf* makes clear that relevance is an insufficient basis for a finding of good cause.

The good cause analysis is fact-sensitive, and "what may be good cause for one type of examination may not be so for another." *Schlagenhauf*, 379 U.S. at 118. If the movant can obtain the desired information through other discovery methods, there is no good cause for conducting a Rule 35 examination to obtain that information. *Id.* "[A] request to examine a party will be denied when the information that can be obtained from a Rule 35 examination is available through other means." *McLaughlin*, 2007 WL 1108527, at *4 (surveying cases).

That is the case here. Defendants possess medical records for January 11, 2011 through August 23, 2018 from Plaintiff's relevant medical providers. Additionally, the Court allowed Defendants to depose the three providers whose treatment is at the center of Plaintiff's allegations. (ECF No. 104). Defendants have since deposed Dr. Ian Tang, the doctor who diagnosed Plaintiff with gender dysphoria and supervised Plaintiff's treatment for that condition, as well as Rissy Batista, the psychologist who treated Plaintiff in the runup and aftermath to Plaintiff's gender reassignment surgery. (Transcript of Oral Argument, at p. 7:4-12). Defendants have also deposed Plaintiff's primary care doctor, Dr. Joseph Vitale. These deposition transcripts were submitted to the Court for in camera review in connection with this Motion.

In light of the comprehensive discovery available to Defendants, Defendants have failed to present a convincing argument for why the Court should compel Plaintiff to submit to an IME. The Court does not dispute that "plaintiff's psychological history is relevant to [Plaintiff's] claim that the emotional distress emanated from" Defendants' actions. *Bowen*, 214 F.R.D. at 195. However, Defendants have already had the opportunity to "question the plaintiff on these issues, request psychological records, and depose [his therapist] on [her] treatment of the plaintiff." *Id.* (denying motion for Rule 35 examination where plaintiff alleged he suffered emotional distress

6

because of his work environment and plaintiff's treating physician testified that plaintiff's work environment exacerbated his depression).

Defendants point the Court to the vagueness of some information in Plaintiff's medical records concerning his emotional distress. (Def.'s Br., ECF No. 97, at p. 18). For example, Plaintiff attended a therapy session with Ms. Batista shortly after Defendants denied the hysterectomy in June 2015, and her records indicate that Plaintiff exhibited only mild anxiety that was not attributed to a specific cause. (*Id*). These shortcomings do not entitle Defendants to compel Plaintiff to sit for an IME. Over four years have passed since the alleged discriminatory incident at issue here. There is little marginal benefit to probing these ambiguities by having Dr. Reeves reevaluate Plaintiff's emotional distress years after the fact. *See McLaughlin v. Atl. City*, 2007 WL 1108527, at *4 (a "difference of opinion [among past physicians] does not necessitate that yet another examination be done, especially when the purpose of the exam is to give an opinion of the patient's mental status 3 ½ years ago.").

At oral argument, Defendants also raised doubts concerning the deposition testimony of Dr. Tang and Ms. Batista. For example, Defendants note that Dr. Tang and Ms. Batista diagnosed Plaintiff based on self-reported symptoms, as is the case with many psychiatric conditions. (Transcript of Oral Argument, at pp. 7:5-25, 8:1-7). Also, Dr. Tang relied on the World Professional Association for Transgender Health ("WPATH") protocol, which Defendants claim is not "universally accepted," to guide his treatment of Plaintiff. (*Id*. at pp. 8:8-25). Finally, rather than Dr. Tang and Ms. Batista independently concluding that a hysterectomy was medically necessary, Plaintiff gave these providers form letters about the hysterectomy's medical necessity to submit to Plaintiff's insurance carrier. (*Id*. at p. 10:8-13).

Where a movant can explore a party's psychiatric condition through other discovery methods, the movant must "produce more than conclusory statements by a psychiatric expert to support its burden of proof" that it is entitled to an IME under Rule 35. *McLaughlin*, 2007 WL 1108527, at *3. Defendants have not sustained their burden of specifically demonstrating that the extraordinary remedy of a Rule 35 examination is necessary here. Defendants argued in a conclusory manner that Dr. Tang and Ms. Batista's testimony raised questions that can only be answered by allowing Dr. Reeves to conduct his own examination of Plaintiff. However, Defendants have not produced any declarations or certifications regarding either Dr. Reeves's qualifications for the diagnosis and treatment of gender dysphoria or his ability to reevaluate Dr. Tang and Ms. Batista's diagnostic techniques and the WPATH treatment protocol by conducting a psychiatric examination of Plaintiff at this stage.

## Conclusion

For the reasons stated above, Defendants' Motion to Compel Mental Examination of Plaintiff is **DENIED**. The Clerk shall terminate ECF No. 96 upon entry of this Opinion and Order.

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**