**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JIONNI CONFORTI, | |
| *Plaintiff*, | |
| v. | Case No. 2:17-cv-00050 (CCC/CLW) |
| ST. JOSEPH'S HEALTHCARE SYSTEM, INC.; ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER D/B/A ST. JOSEPH'S REGIONAL MEDICAL CENTER; and FATHER MARTIN D. ROONEY, | Motion Day: July 20, 2020 |
| *Defendants*. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPEAL FROM MAGISTRATE JUDGE'S JANUARY 22, 2020 AND MARCH 30, 2020 ORDERS**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ....................................................................................................3

      A.      Mr. Conforti's Undisputed Diagnosis And Treatment For Gender Dysphoria ..............................................................................................3

      B.      Defendants' Discriminatory Denial Of Access To Medical Care ...........4

      C.      The Instant Action..................................................................................5

LEGAL STANDARD...............................................................................................7

      A.      Independent Mental Examinations Under Rule 35 ................................7

      B.      Appeal Of Magistrate Judge's Non-Dispositive Discovery Order .........8

ARGUMENT ..........................................................................................................9

I.      THE MAGISTRATE JUDGE CORRECTLY APPLIED THE HIGHER STANDARD FOR MOTIONS TO COMPEL A MENTAL EXAMINATION UNDER RULE 35 ....................................................................................9

II.     THE MAGISTRATE JUDGE CORRECTLY FOUND THAT MR. CONFORTI'S MENTAL CONDITION IS NOT "IN CONTROVERSY"....................12

      A.      Mr. Conforti Does Not Allege That Defendants Caused A Specific Mental Or Psychiatric Injury Or Disorder.........................................................14

      B.      Mr. Conforti's Gender Dysphoria Diagnosis Is Not "In Controversy" Here ........18

      C.      The District Court Should Disregard Defendants' New Evidence Of Mr. Conforti's Expert Reports On Appeal..................................................22

III.    THE MAGISTRATE JUDGE CORRECTLY FOUND THAT DEFENDANTS FAILED TO ESTABLISH "GOOD CAUSE" ..................................................26

IV.   ORDERING A RULE 35 MENTAL EXAMINATION AS A CONDITION OF BRINGING DISCRIMINATION CLAIMS IS CONTRARY TO PUBLIC POLICY ........................................................................................27

V.     DEFENDANTS FAILED TO ESTABLISH DR. REEVES'S QUALIFICATIONS UNDER RULE 35 .................................................................................29

CONCLUSION......................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*Benham v. Rice*,
   2007 WL 8042488 (D.D.C. Sept. 14, 2007) ....................................................... 2, 28

*Berardino v. Prestige Mgmt. Servs., Inc.*,
   2017 WL 1084523 (D.N.J. Mar. 21, 2017) ........................................................ 8, 23

*Bowen v. Parking Auth. of Camden*,
   214 F.R.D. 188 (D.N.J. 2003) ................................................................... 12, 13, 25

*Campbell v. New Jersey*,
   2017 WL 5593778 (D.N.J. Nov. 21, 2017) .............................................................. 8

*Cauley v. Ingram Micro, Inc.*,
   216 F.R.D. 241 (W.D.N.Y. 2003) ........................................................................... 18

*Cody v. Marriott Corp.*,
   103 F.R.D. 421 (D. Mass. 1984) ............................................................................. 28

*Cowher v. Carson & Roberts*,
   40 A.3d 1171 (N.J. App. Div. 2012) ....................................................................... 20

*Dahdal v. Thorn Americas, Inc.*,
   1998 WL 37532 (D. Kan. Jan. 28, 1998) ............................................................... 18

*Denny v. Wingspan Portfolio Advisors, LLC*,
   2013 WL 2434572 (N.D. Tex. June 5, 2013) ......................................................... 17

*Diunugala v. Dep't of Conservation*,
   2018 WL 6137595 (C.D. Cal. Jan. 31, 2018) ......................................................... 16

*Druding v. Care Alternatives*,
   2018 WL 6573096 (D.N.J. Mar. 22, 2018) ............................................................... 8

*Duncan v. Upjohn Co.*,
   155 F.R.D. 23 (D. Conn. 1994) ............................................................................... 16

*E.E.O.C. v. City of Long Branch*,
   866 F.3d 93 (3d Cir. 2017) ........................................................................................ 8

*E.E.O.C. v. Maha Prabhu, Inc.*,
   2008 WL 2559417 (W.D.N.C. June 23, 2008) ................................................. 16, 26

*Flores-Febus v. MVM, Inc.*,
   299 F.R.D. 338 (D.P.R. 2014) ................................................................................. 17

*Fox v. Gates Corp.*,
   179 F.R.D. 303 (D. Colo. 1998) .............................................................................. 13

*In re Gabapentin Patent Litigation*,
   312 F. Supp. 2d 653 (D.N.J. 2004) ..................................................................... 8, 23

*Gavin v. Hilton Worldwide, Inc.*,
   291 F.R.D. 161 (N.D. Cal. 2013) ......................................................... 17

*Haines v. Liggett Grp. Inc.*,
   975 F.2d 81 (3d Cir. 1992) ............................................................ 7, 22

*Hardin v. Mendocino Coast Dist. Hosp.*,
   2019 WL 1493354 (N.D. Cal. Apr. 4, 2019) ........................................ 16

*Hernandez v. Simpson*,
   2014 WL 4090513 (C.D. Cal. Aug. 18, 2014) ................................. 16, 17

*Horner v. Cummings*,
   2015 WL 13613261 (M.D. Pa. Oct. 27, 2015) ..................................... 22

*Houghton v. M & F Fishing, Inc.*,
   198 F.R.D. 666 (S.D. Cal. 2001) ................................................. 11, 16

*K.S-A v. Hawaii, Dep't of Educ.*,
   2018 WL 2144143 (D. Haw. May 9, 2018) ......................................... 22

*Karrani v. JetBlue Airways Corp.*,
   2019 WL 2269818 (W.D. Wash. May 28, 2019) .............................. 15, 16

*Kendricks v. Hertz Corp.*,
   2006 WL 3404566 (D.V.I. Oct. 30, 2006) ........................................... 22

*King v. Mansfield Univ. of Penn.*,
   2014 WL 563323 (M.D. Pa. Feb. 11, 2014) ....................................... 26

*Kresefky v. Panasonic Commc'ns & Sys. Co.*,
   169 F.R.D. 119 (D.N.J. 1998) ........................................................... 8

*Kuminka v. Atlantic County New Jersey*,
   551 F. App'x 27 (3d Cir. 2014) .............................................. 7, 12, 18

*Lifecell Corp. v. Lifenet Health*,
   2016 WL 3545752 (D.N.J. June 28, 2016) ........................................... 2

*Montana v. County of Cape May Board of Freeholders*,
   2013 WL 1750002 (D.N.J. Apr. 22, 2013), *aff'd*, 2013 WL 5724486
   (D.N.J. Oct. 18, 2013) ............................................... 11, 15, 24

*Montana v. County of Cape May Board of Freeholders*,
   2013 WL 5724486 (D.N.J. Oct. 18, 2013) ...................................... 15, 24

*O'Quinn v. N.Y. Univ. Med. Ctr.*,
   163 F.R.D. 226 (S.D.N.Y. 1995) ....................................................... 17

*Ortiz v. Potter*,
   2010 WL 796960 (E.D. Cal. Mar. 5, 2010) ......................................... 13

*Rapaport v. Robin S. Weingast & Assocs., Inc.*,
   2013 WL 6022441 (D.N.J. Nov. 13, 2013) ........................................... 8

*Rhett v. New Jersey*,
   2007 WL 1456199 (D.N.J. May 14, 2007) ......................................... 26

*Robinson v. HD Supply, Inc.*,
   2013 WL 3815987 (E.D. Cal. July 19, 2013) ...................................................... 19

*Schlagenhauf v. Holder*,
   379 U.S. 104 (1964)................................................... 7, 8, 9, 11, 18, 25, 26, 28

*Shirsat v. Mutual Pharm. Co.*,
   169 F.R.D. 68 (E.D. Pa. 1996)..................................................................... 26

*T.E. v. Pine Bush Cent. Sch. Dist.*,
   58 F. Supp. 3d 332 (S.D.N.Y. 2014)............................................................. 20

*Thiessen v. Gen. Elec. Capital Corp.*,
   178 F.R.D. 568 (D. Kan. 1998)..................................................................... 16

*Turner v. Imperial Stores*,
   161 F.R.D. 89 (S.D. Cal. 1995) ............................................................... 12, 13

*Wachtel v. Guardian Life Ins. Co.*,
   239 F.R.D. 376 (D.N.J. 2006)..................................................................... 8, 9

*Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*,
   315 F.R.D. 612 (N.D. Fla. 2016) ......................................................... 15, 16, 28

*Zinaman v. Kingston Reg'l Senior Living Corp.*,
   2014 WL 282633 (N.D.N.Y. Jan. 23, 2014)..................................................... 15

## Rules / Statutes

28 U.S.C. §636(b)(1)(A) .............................................................................. 8

42 U.S.C. § 18116 ..................................................................................... 1

Fed. R. Civ. P. 26 ..................................................... 5, 6, 7, 9, 10, 11, 12

Fed. R. Civ. P. 34 .................................................................................. 7, 11

Fed. R. Civ. P. 35 ............................................................................... *passim*

Fed. R. Civ. P. 72 .................................................................................... 8

Fed. R. Evid. 702 .................................................................................... 29

L. Civ. R. 72.1(c)(1)(A) ............................................................................. 8

N.J.S.A. 10:5-12 ...................................................................................... 1

N.J.S.A. 10:5-5 (rr) .................................................................................. 20

## Other Authorities

*Barna Grp., Americans Feel Good About Counseling*, https://perma.cc/H4PB-22PT.
   (Feb. 27, 2018)........................................................................................ 28

Sandy E. James et al., *Nat'l Ctr. for Transgender Equality, The Report of the 2015 U.S.
   Transgender Survey at 98*, https://transequality.org/sites/default/files/docs/usts/USTS-
   Full-Report-Dec17.pdf. (2016) ................................................................. 28

Plaintiff Jionni Conforti ("Mr. Conforti") respectfully submits this opposition to Defendants' appeal (Dkt. 130) ("Br.") from the Magistrate Judge's Orders correctly denying: (1) Defendants' motion to compel Mr. Conforti to undergo a Rule 35 mental examination, dated January 22, 2020 (Dkt. 116) ("Rule 35 Order"); and (2) Defendants' motion for reconsideration of the denial, dated March 30, 2020 (Dkt. 128) ("Reconsideration Order").

## PRELIMINARY STATEMENT

This action arises out of Defendants' discrimination against Mr. Conforti, a man who is transgender, in June 2015, when he sought and was denied access to a medically necessary hysterectomy by Defendants solely because of his sex, non-conformity with sex stereotypes, gender identity, and transgender status. Mr. Conforti brings only two claims in his Complaint: (1) violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and (2) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12. In addition to declaratory and injunctive relief against Defendants, Mr. Conforti seeks only standard compensatory damages for the "garden variety" emotional distress he experienced as a victim of discrimination. The central facts of this case are undisputed: Mr. Conforti sought a hysterectomy as treatment for gender dysphoria, and Defendants refused to allow it to be performed at their hospital solely for that reason.

Nonetheless, after more than three years of discovery, Defendants demand that Mr. Conforti be subjected to a highly invasive and wholly unnecessary mental examination by their psychiatrist, despite falling far short of the exacting standards of Rule 35. As Judge Waldor correctly found twice, Defendants failed to carry their burden of showing both that Mr. Conforti's current mental status is "in controversy" as contemplated by Rule 35, and that there is "good cause" to compel a mental examination here. Judge Waldor recognized that none of the five *Turner* factors considered by courts in the Third Circuit for the "in controversy" requirement were satisfied

here, as Mr. Conforti does not assert any claim for relief or allegation of emotional distress beyond the standard, garden-variety distress any victim of discrimination would suffer.  And Judge Waldor separately found that Defendants failed to establish "good cause" for an invasive mental examination in light of the "comprehensive discovery available to Defendants" already, including over seven years of Mr. Conforti's medical records and deposition testimony from Mr. Conforti and three of his medical providers.

Defendants' instant appeal must establish that **both** conclusions were "clearly erroneous or contrary to law," as Defendants carry the burden of showing that both the "in controversy" and "good cause" requirements are satisfied to prevail under Rule 35.  They cannot.  Instead, they merely rehash the same extreme arguments rejected by Judge Waldor, arguing that a Rule 35 mental examination is broadly warranted when a litigant is transgender or previously sought mental health treatment unrelated to the discriminatory conduct.  Courts wisely refuse to order Rule 35 exams in such circumstances in light of the "unwarranted chilling effect on persons who believe that they have been subjected to unlawful discrimination if they faced a physical or mental examination anytime they sought redress for such perceived discrimination."  *Benham v. Rice*, 2007 WL 8042488, at *2 (D.D.C. Sept. 14, 2007).

Judge Waldor addressed and disposed of each of Defendants' arguments in detail, and Defendants offer no reason to conclude she committed "clear error."  As this Court has recognized, "the magistrate judge is accorded wide discretion" in resolving non-dispositive motions, and this Court's "simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review."  *Lifecell Corp. v. Lifenet Health*, 2016 WL 3545752, at *1-2 (D.N.J. June 28, 2016) (Cecchi, J.).  Because Defendants do not come close to satisfying this

standard—either as to Judge Waldor's findings that Mr. Conforti's mental health is not "in controversy" or that Defendants have not established "good cause"—their appeal should be denied.

## BACKGROUND

### A.     Mr. Conforti's Undisputed Diagnosis And Treatment For Gender Dysphoria

In 2014, Mr. Conforti was diagnosed with gender dysphoria by Dr. Ian Tang and his team of medical professionals at Apicha Community Health Center.  *See* Compl. ¶¶ 3, 55.  Gender dysphoria is a serious but treatable medical condition referring to the clinically significant distress that can result when a person's gender identity differs from the person's sex assigned at birth.  *Id.* ¶ 29.  Gender dysphoria is recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, which sets forth specific diagnostic criteria for gender dysphoria in adults.  *Id.* ¶¶ 30-32.

Mr. Conforti had struggled with depression and anxiety for years growing up, but he did not realize until later in life that gender dysphoria was a cause.  *Id.* ¶¶ 3, 51-54.  After his diagnosis, Mr. Conforti began treatment for gender dysphoria, which included receiving hormone therapy and later undergoing a double mastectomy.  *Id.* ¶¶ 34, 55-56.  In 2015, in consultation with and at the recommendation of his medical providers, Mr. Conforti took the next steps to undergo a hysterectomy as part of his medically necessary treatment for gender dysphoria.  *Id.* ¶¶ 4, 57. Ultimately, Mr. Conforti consulted with Dr. Brian Day, an experienced surgeon at Totowa OB/GYN who had been referred to Mr. Conforti and who had admitting privileges at St. Joseph's Hospital ("SJH"), one of Defendants' hospitals and Mr. Conforti's lifelong hospital.  *Id.* ¶¶ 4-5, 49-50, 58-59.  Mr. Conforti explained to Dr. Day via email that he sought a full hysterectomy because of his "Gender Identity Disorder," or gender dysphoria (*id.* ¶ 60); Dr. Day responded that he would be "happy to help" Mr. Conforti by performing the procedure.

Mr. Conforti further obtained referral letters for insurance coverage purposes from Dr. Tang (who managed aspects of his treatment for gender dysphoria) and Ms. Rissy Batista (his therapist), confirming that a total hysterectomy was recommended as the next step to treat Mr. Conforti's gender dysphoria. *Id.* ¶¶ 4, 61-63. In fact, on June 8, 2015, Mr. Conforti went in person to SJH and confirmed with the "head nurse of surgery" that there would be no issues with scheduling a hysterectomy for the treatment of gender dysphoria. *Id.* ¶ 65. This was consistent with SJH's "Patient Bill of Rights," which provides that all patients are entitled to "Legal Rights," including "treatment and medical services without discrimination based on … sex … [and] gender identity or expression." *Id.* ¶ 47.

### B.   Defendants' Discriminatory Denial Of Access To Medical Care

Despite the recommendations of Mr. Conforti's medical providers and Dr. Day's willingness to perform the hysterectomy, Defendants unequivocally refused to allow the procedure to go forward at SJH. On June 16, 2015, the day of Mr. Conforti's appointment with Dr. Day, Defendant Father Martin Rooney, the Director of Mission Services at SJH and who has no medical training, e-mailed Mr. Conforti for the first time to inform him that, "as a Catholic Hospital we would not be able to allow your surgeon to schedule" "a total hysterectomy … to remove all female parts based on the medical necessity for Gender Reassignment." *Id.* ¶¶ 8, 64, 69.

Because Dr. Day only had admitting privileges at SJH, he was unable to perform the hysterectomy for Mr. Conforti at all. *Id.* ¶ 68. Like all victims of such blatant discrimination, Mr. Conforti naturally felt betrayed, humiliated, and anxious, particularly at having to once again search for a surgeon and hospital he could trust to perform this highly sensitive surgical procedure. *Id.* ¶¶ 9, 73-74. He was further afraid of being discriminated against by SJH again if he returned even for treatment or care unrelated to gender dysphoria. *Id.* ¶ 75. In September 2015, Mr. Conforti was able to undergo a hysterectomy at another hospital with a different surgeon.

## C.     The Instant Action

On January 5, 2017, Mr. Conforti filed the instant Complaint alleging discrimination in violation of the ACA (Count 1) and the NJLAD (Count 2).  Dkt. 1.  Mr. Conforti seeks declaratory and injunctive relief, as well as compensatory damages "for his emotional distress and suffering, embarrassment, humiliation, emotional pain and anguish, violation of his dignity, and loss of enjoyment of life" caused by Defendants' acts of discrimination.  Compl. pp. 24-25.  Notably, Mr. Conforti did ***not*** bring a claim of intentional or negligent infliction of emotional distress.

Throughout 2018 and 2019, the parties faced numerous discovery issues relating to Defendants' pursuit of Mr. Conforti's medical records and testimony from Mr. Conforti's medical providers.  *See, e.g.*, Dkt. 69.  Ultimately, Mr. Conforti produced hundreds of pages of his personal medical records from six different medical providers spanning over seven-and-a-half years (from January 1, 2011 to August 23, 2018), including over three years ***after*** the discriminatory conduct occurred.  *See* Dkt. 69-1 at 5-6; Dkt. 104 at 4.  Defendants deposed Mr. Conforti extensively on his medical records and mental health history in January 2019.

On a prior motion to quash filed by Mr. Conforti, Judge Waldor further permitted Defendants to depose only three of Mr. Conforti's medical providers, including Dr. Tang and Ms. Batista, under the liberal Rule 26 "relevance" standard in light of their "reasonable temporal scope" to "Defendants' alleged wrongdoing and in its immediate aftermath."  Dkt. 104 at 4.  However, Judge Waldor quashed Defendants' subpoenas for additional medical records after August 2018 and depositions of four additional medical providers, finding that Defendants "failed to demonstrate that the benefits of any additional information … would outweigh the incursion on Plaintiff's privacy interests and the burden on both Plaintiff and his medical providers," particularly as those providers' treatment was "highly attenuated" to Mr. Conforti's "emotional

distress damages." *Id.* at 8, 10 (further finding a lack of relevance for "medical records for treatment that occurred upwards of three years after the alleged act of discrimination").

In July 2019, ***two-and-a-half years*** after this action was initiated, Defendants filed their initial motion to compel a mental examination of Mr. Conforti under Rule 35 ("Rule 35 motion"), Dkt. 96, which Mr. Conforti opposed, Dkt. 100.  After oral argument, on January 22, 2020, Judge Waldor denied Defendants' Rule 35 motion.  Dkt. 116.  Unremarkably, Judge Waldor concluded that the mere fact that a litigant is transgender or has a prior mental health history for which he does not seek damages is insufficient to place his current mental condition "in controversy" for the purposes of Rule 35.  *Id.* at 3-5.  Judge Waldor separately found that, regardless, the Rule 35 motion "still fails for lack of good cause," as the "comprehensive discovery available to Defendants" already was fatal to their "conclusory" assertion of necessity for "the extraordinary remedy of a Rule 35 examination."  *Id.* at 5-8.

In February 2020, Defendants filed a motion for reconsideration, Dkt. 119, which Mr. Conforti also opposed, Dkt. 126.  Judge Waldor denied that motion on March 30, 2020.  Dkt. 128. In particular, Judge Waldor rejected Defendants' specious argument that her decision allowing three depositions of medical providers to go forward under Rule 26 automatically entitled Defendants to a more invasive Rule 35 mental examination.  *Id.* at 2.  Judge Waldor further found that Defendants failed to point to any clear error of law or fact in the Court's conclusion that "Defendants did not make an affirmative showing that Plaintiff has placed his mental condition in controversy" under Rule 35, or that Defendants again failed to meet their "burden of affirmatively demonstrating that there is good cause for Dr. Reeve's examination."  *Id.* at 2-3.

Finally, as the parties stipulated in their latest joint proposed schedule on expert discovery, Dkt. 117, Mr. Conforti served his expert reports on March 20, 2020, ***prior to*** the entry of Judge

Waldor's order denying Defendants' motion for reconsideration.  Defendants did not present Mr. Conforti's expert reports as supplemental evidence in support of their reconsideration motion.

## **LEGAL STANDARD**

### A.      **Independent Mental Examinations Under Rule 35**

Unlike typical discovery requests, which are only limited by the broad relevancy and proportionality principles under Rule 26, a motion to compel an independent mental examination is subject to the far more exacting standards of Rule 35.  Compelling a party to undergo a mental examination under Rule 35 is a particularly invasive discovery tool, requiring the moving party to prove to the Court why a mental examination is warranted.

Pursuant to Rule 35, the Court "may order" a mental examination of a party "by a suitably licensed or certified examiner" when the moving party demonstrates that a mental condition is "in controversy," Fed. R. Civ. P. 35(a)(1), and only "for good cause" shown, Fed. R. Civ. P. 35(a)(2)(A).  The movant must further "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B).  The "in controversy" and "good cause" requirements are unique to Rule 35: "[I]n none of the other discovery provisions is there a restriction that the matter be 'in controversy,' and only in Rule 34 is there Rule 35's requirement that the movant affirmatively demonstrate 'good cause.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964).

A motion based on "mere conclusory allegations of the pleadings" and "mere relevance to the case," *i.e.* based on Rule 26 alone, fails to meet the stringent requirements of Rule 35.  *Id.* at 118; *accord Kuminka v. Atlantic County New Jersey*, 551 F. App'x 27, 29 (3d Cir. 2014).  As the Supreme Court dictated, "Rule 35 … requires ***discriminating application*** by the trial judge, who must decide … whether the party requesting a mental or physical examination or examinations has

adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" *Schlagenhauf*, 379 U.S. at 118-19 (emphasis added).

### B.     Appeal Of Magistrate Judge's Non-Dispositive Discovery Order

In general, district courts are bound by a non-dispositive order entered by a Magistrate Judge unless the order is "clearly erroneous or contrary to law."   28 U.S.C. § 636(b)(1)(A); L. Civ. R. 72.1(c)(1)(A); *see also Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (quoting Fed. R. Civ. P. 72(a)).   "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *E.E.O.C. v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017).   Importantly, district courts should "accord[] '[p]articular deference … to magistrate judges on discovery issues.'" *Rapaport v. Robin S. Weingast & Assocs., Inc.*, 2013 WL 6022441, at *2 (D.N.J. Nov. 13, 2013); *see also Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) (a magistrate judge's ruling "on a non-dispositive matter … is entitled to great deference").   "This is especially true where, as here, the magistrate judge has managed discovery … from virtually the outset and developed a thorough knowledge of the proceedings." *Druding v. Care Alts.*, 2018 WL 6573096, at *3 (D.N.J. Mar. 22, 2018) (quotations omitted).

A magistrate judge's order is "clearly erroneous" only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376, 384 (D.N.J. 2006) (citation omitted).  That is, a magistrate judge's order is not clearly erroneous unless it is "simply 'dead wrong.'" *Campbell v. New Jersey*, 2017 WL 5593778, at *5 (D.N.J. Nov. 21, 2017) (citation omitted).  Further, when reviewing factual findings for clear error, the district judge "may not take into consideration any evidence that was not put forth before the magistrate judge when reviewing the magistrate judge's factual determination." *Berardino v. Prestige Mgmt. Servs., Inc.*, 2017 WL 1084523, at *2 (D.N.J. Mar. 21, 2017); *see also In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 661 (D.N.J. 2004)

(stating on an appeal of a magistrate judge's order that "the district court is bound by the clearly erroneous rule in reviewing questions of fact, and it is not permitted to receive further evidence"). "To be contrary to law, a magistrate judge's order must have misinterpreted or misapplied applicable law." *Wachtel*, 239 F.R.D. at 385 (citation omitted).

## ARGUMENT

Defendants' appeal merely rehashes their disagreement with Judge Waldor's Rule 35 Order and Reconsideration Order, and fails to show how either order was "clearly erroneous or contrary to law." They were not. Defendants' request for a highly invasive mental examination of Mr. Conforti is entirely unwarranted under both the applicable law and the facts of this case, particularly since it would greatly infringe on Mr. Conforti's privacy rights while providing no assistance to the Court or a jury in deciding the core issues in this case. Defendants failed to demonstrate ***both*** that, contrary to Judge Waldor's findings of fact, Mr. Conforti's current mental condition is "in controversy" as understood under Rule 35 and that there is "good cause" to warrant ordering Mr. Conforti to undergo an invasive mental examination. Indeed, Defendants once again argue that a mental examination is warranted, using the same generic arguments equally applicable to nearly ***any*** victim of discrimination and/or litigants with separate mental health history. Upon a "discriminating application … of the limitations prescribed by" Rule 35, *Schlagenhauf*, 379 U.S. at 121, it is clear that Judge Waldor correctly denied Defendants' motion to compel a mental examination of Mr. Conforti. Defendants' Rule 35 appeal should be denied as well.

## I.   THE MAGISTRATE JUDGE CORRECTLY APPLIED THE HIGHER STANDARD FOR MOTIONS TO COMPEL A MENTAL EXAMINATION UNDER RULE 35

Defendants assert only one purported error of law, arguing that it was erroneous for Judge Waldor to apply the "higher legal standard under Rule 35" to Defendants' Rule 35 motion rather than the more liberal discovery standard under Rule 26. Br. 17-18. Defendants' argument is flatly

refuted by the plain text of Rule 35, and they cite to no authority suggesting that the "in controversy" and "good cause" requirements do not constitute "a separate and more exacting standard than [the standard applied to] other forms of discovery."  Reconsideration Order at 2.

Defendants' attempt to sidestep the appropriate Rule 35 standard should be rejected. Defendants wrongly contend that Judge Waldor's prior conclusion under Rule 26 allowing Defendants to depose Ms. Batista, Mr. Conforti's therapist immediately before and after the discriminatory events in June 2015, should be dispositive of whether Mr. Conforti's current mental state is "in controversy" and whether there is "good cause" to require an examination.  Yet this is *exactly opposite of the position taken by Defendants* while opposing Mr. Conforti's motion to quash those deposition subpoenas.  *See* Dkt. 73 at 10 n.1, 16.  Specifically, Defendants argued then that Mr. Conforti was improperly trying to incorporate Rule 35's "in controversy" requirement "into the Rule 26 analysis" and "blur the inquiry" on Mr. Conforti's motion to quash.  *Id.* at 15-16.  Yet as Defendants then conceded:  "[C]ourts have consistently made a distinction between the 'in controversy' requirement in the context of Rule 35(a) and Rule 26(b)."  *Id.* at 16 (quoting *Frazier v. Sinseki*, 2014 WL 1618448, *1 (W.D. Pa. Apr. 22, 2014)); *see also* Dkt. 115 ("12/03 Hr'g Tr.") 31:12-16 (Defendants "agree it's a higher standard" under Rule 35 at oral argument on the Rule 35 motion).  Defendants cannot now reverse course and argue that a Rule 26 discovery decision is dispositive of a Rule 35 motion.

Regardless, Judge Waldor's decision to permit depositions of only three of the six medical providers for Mr. Conforti is entirely consistent with her subsequent Rule 35 Order.  Contrary to Defendants' representation, Judge Waldor did ***not*** previously find that "Plaintiff's emotional condition is not garden variety."  Br. 18.  Rather, in ruling on the motion to quash, Judge Waldor only found that, under the more liberal Rule 26 discovery standard, Defendants were entitled to

depose Ms. Batista to "explor[e] other contributing factors to Conforti's emotional distress," "whether 'garden variety' or otherwise."  Dkt. 104 at 8 ("At the discovery stage, Defendants are entitled to pursue **relevant inquiries** into these complex emotional and psychological factors, which cannot be neatly reduced to 'garden variety' distress ***at this stage***.") (emphasis added).

Indeed, Judge Waldor reached the ***opposite*** conclusion with respect to Mr. Conforti's more recent therapist, Dr. Vincent Fitzgerald (*id.* at 9-10), finding that "any connection to Plaintiff's emotional distress damages" and Dr. Fitzgerald's treatments "more than two years after St. Joseph's denial of the hysterectomy" was too "highly attenuated." *Id.* at 10.  Judge Waldor's ruling under Rule 26 turned on ***temporal proximity and relevance*** to the acts of discrimination in June 2015, and did ***not*** find that Mr. Conforti alleged something beyond "garden variety."  It is therefore entirely consistent to apply the higher standards of Rule 35 to deny a ***present day*** mental examination more than ***five years*** after the discrimination and resulting damages occurred.

Judge Waldor properly applied the "exacting" standard in denying Defendants' motion for an independent mental examination.  Reconsideration Order at 2.  Because of the invasive nature of Rule 35, "[m]ental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule."  *Montana v. Cty. of Cape May Bd. of Freeholders*, 2013 WL 1750002, at *2 (D.N.J. Apr. 22, 2013), *aff'd*, 2013 WL 5724486 (D.N.J. Oct. 18, 2013) ("*Montana I*"); *see Houghton v. M & F Fishing, Inc.*, 198 F.R.D. 666, 667 (S.D. Cal. 2001) ("physical or mental examinations under Rule 35 are treated differently than other discovery methods, e.g. interrogatories, depositions, requests for production of documents").  Judge Waldor's scrutiny is consistent with the clear guidance provided by the Supreme Court as well, which has opined that the "good cause" standard "indicate[s] that there must be greater showing of need under Rules 34 and 35 than under the other discovery rules."

*Schlagenhauf*, 379 U.S. at 121.  "To hold otherwise would mean that such examinations could be ordered routinely … The plain language of Rule 35 precludes such an untoward result."  *Id.*

Thus, while there is always a threshold question of whether certain subject matters are generally discoverable under Rule 26(b)(1), "mere relevance to the case" is alone insufficient to warrant a Rule 35 examination.  *Kuminka*, 551 F. App'x at 29; *see also, e.g.*, *Bowen v. Parking Auth. of Camden*, 214 F.R.D. 188, 194 (D.N.J. 2003) (granting Rule 26 motion to seek mental health records but denying Rule 35 motion for an independent mental evaluation).  No error results from Judge Waldor's decisions to allow depositions of Mr. Conforti and some—but not all—of Mr. Conforti's medical providers pursuant to Rule 26, and later denying a further independent mental examination of Mr. Conforti pursuant to Rule 35.  Rather, different standards clearly apply.

## II.  THE MAGISTRATE JUDGE CORRECTLY FOUND THAT MR. CONFORTI'S MENTAL CONDITION IS NOT "IN CONTROVERSY"

Defendants' appeal further contends that Judge Waldor's finding that Mr. Conforti's current mental condition is not "in controversy" was "clearly erroneous."  It was not.  The allegations in the Complaint and Mr. Conforti's deposition testimony confirm that Mr. Conforti only claims that Defendants' discriminatory acts caused him "garden variety" emotional distress, *i.e.* the "standard" harm experienced by any victim of discrimination for which compensatory damages would be warranted.  *See* Rule 35 Order at 4.  "[M]ost courts agree that for a plaintiff's mental status to be 'in controversy' requires more than 'garden variety' emotional distress allegations that are part and parcel of the plaintiff's underlying claim."  *Bowen*, 214 F.R.D. at 193 (collecting cases).  Numerous federal courts, including the Third Circuit and the District of New Jersey, have embraced the Rule 35 test set forth in *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D.

Cal. 1995),[1] which "conducted an exhaustive and exacting review of the relevant cases," *Bowen*, 214 F.R.D. at 193, and found five circumstances ***beyond a generic claim of emotional distress*** in which a mental condition is sufficiently placed "in controversy" under Rule 35:

> [A] court will order plaintiffs to undergo mental examinations when, ***in addition to a claim of emotional distress***, one or more of the following elements are present: "(1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a)."

*Bowen*, 214 F.R.D. at 193 (quoting *Turner*, 161 F.R.D. at 95) (emphasis added).

As Judge Waldor correctly found, none of the *Turner* circumstances apply here to place Mr. Conforti's current mental state "in controversy," as: (1) Mr. Conforti "does not assert a cause of action for intentional or negligent infliction of emotional distress;" (2) he does not "allege a claim of unusually severe emotional distress;" (3) he "does not plan to offer expert testimony to support his emotional distress damages;" (4) he will not offer "evidence that Defendants' conduct caused or exacerbated any clinical conditions;" (5) he has only "testified about his ongoing emotional distress in a colloquial manner," noting that Mr. Conforti merely said in his January 2019 deposition that what happened "still upsets me;" (6) the Complaint only "contains standard language concerning the emotional distress damages typically sought in discrimination cases;" and (7) Defendants have "at no point … asserted that they refused to perform a hysterectomy because Plaintiff does not suffer from gender dysphoria." Rule 35 Order at 3-5. Defendants acknowledge

---

[1]   *See, e.g.*, *Kuminka*, 551 F. App'x at 29 (applying the *Turner* test to a Rule 35 motion); *Ortiz v. Potter*, 2010 WL 796960, at *2 (E.D. Cal. Mar. 5, 2010) (the *Turner* "in controversy" test "has been regularly applied by district courts"); *Fox v. Gates Corp.*, 179 F.R.D. 303, 307 (D. Colo. 1998) (the "majority of courts" apply the *Turner* test for Rule 35 motions).

these findings (Br. 14), but offer no real argument on how they are clearly erroneous or why Judge Waldor's conclusions on a non-dispositive discovery motion should be discounted.

At most, Defendants argue that Mr. Conforti's mental status is "in controversy" because he (1) has a history of mental health treatment, even though Mr. Conforti has not argued that it was caused by Defendants' misconduct and it is not related to Mr. Conforti's request for damages, or (2) was previously diagnosed with gender dysphoria, even though Defendants concede that their denial of access to medical care was not based on any doubts about Mr. Conforti's diagnosis. Neither basis is sufficient to warrant reversal of Judge Waldor's denial of the Rule 35 motions.

### A.    Mr. Conforti Does Not Allege That Defendants Caused A Specific Mental Or Psychiatric Injury Or Disorder

*First*, as Judge Waldor correctly recognized (Rule 35 Order at 4), Mr. Conforti does not claim that Defendants' discrimination caused a specific psychiatric injury or disorder such that an invasive mental examination by Defendants' expert is warranted. Mr. Conforti has also made clear that "he will not introduce evidence that Defendants' conduct caused or exacerbated any clinical conditions." *Id.* And his Complaint only "contains standard language concerning the emotional distress damages typically sought in discrimination cases." *Id.* By contrast, Defendants have offered no plausible basis for the Court to find that Mr. Conforti's mental condition is sufficiently "in controversy" to meet the high threshold for Rule 35 and an appeal of a non-dispositive discovery motion. Defendants largely contend that Mr. Conforti's mental state is "in controversy" because he was previously diagnosed with certain mental health conditions, which Mr. Conforti has (i) never disputed and, regardless, (ii) never sought compensatory damages for or alleged they were caused and/or worsened by Defendants.

While Mr. Conforti testified in a general and "colloquial manner" that being discriminated against caused him to feel "upset," "hurt," "distress[ed]," and "depress[ed]," (Rule 35 Order at 4),

such garden-variety harm is a far cry from any allegations that it caused clinical depression or required any medical treatment.  Courts routinely caution that "assigning such weight to [these words] is a mistake—taken *in context*, the word [anxiety] in this case does not mean 'a severe anxiety disorder,' but rather the type of anguish that normally accompanies … discrimination, or perhaps something only slightly more serious than that." *Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 315 F.R.D. 612, 615 (N.D. Fla. 2016) (concluding the same for "somewhat vague" words like "depression" and "insomnia," as they are "the type of psychological injuries one would expect to occur as the result of … discrimination"); *see also Montana v. Cty. of Cape May Bd. of Freeholders*, 2013 WL 5724486, at *4 (D.N.J. Oct. 18, 2013) ("Describing plaintiff's character traits or stating that he experienced stress and anger after experiencing alleged harassment neither raises plaintiff's emotional distress claims to a level of severe mental injury, nor does it highlight a specific mental injury.").  Mr. Conforti's broad allegations simply describe his "anxiety [and feeling depressed] in a generalized way" and not "in a manner that suggests a clinical condition" resulting from Defendants' actions. *Karrani v. JetBlue Airways Corp.*, 2019 WL 2269818, at *3 (W.D. Wash. May 28, 2019).  There is simply no allegation or claim of a "specific mental or psychiatric injury or disorder" in the clinical sense which would warrant an invasive mental examination by a psychiatric expert chosen by Defendants.

In other words, Mr. Conforti's two discrimination claims only seek compensatory damages for the standard, "garden variety" emotional distress which directly and naturally flows from any act of discrimination, such as Defendants' actions in this case.  As described by one court, "garden variety emotional distress refers to anxiety, humiliation, shame, embarrassment, mental suffering, and distress that may flow naturally from an event that is an affront to one's dignity" and which one "would likely feel as a result of being victimized." *Zinaman v. Kingston Reg'l Senior Living*

*Corp.*, 2014 WL 282633, at \*2 (N.D.N.Y. Jan. 23, 2014).  "In these types of claims, the evidence is often described in vague or conclusory terms."  *Id.*; *see also Houghton*, 198 F.R.D. at 669 ("garden variety" emotional distress is "that normally associated with or attendant to the suffering of" an injury).  Emotional distress including generalized, non-clinical descriptions of depression and anxiety has been labeled as no more than "garden variety" by other courts.  *See, e.g.*, *Karrani*, 2019 WL 2269818, at \*3 (distinguishing between "garden variety" allegations of "anxiety in a generalized way, relying on the dictionary definition of the term: 'fear or nervousness about what might happen,'" which was a "lay observation of Mr. Karrani's emotions" and not a "clinical condition of anxiety"); *Winstead*, 315 F.R.D. at 615 (finding allegations of "loss of enjoyment of life, pain and suffering, mental anguish, … depression, anxiety and lack of sleep" to be "inside the garden"); *Hernandez v. Simpson*, 2014 WL 4090513, at \*3 (C.D. Cal. Aug. 18, 2014) (similar).

Indeed, Mr. Conforti's allegations fall far below the type of specific injuries alleged in cases where courts found the emotional harm to be more than garden variety or unusually severe.[2] *See also E.E.O.C. v. Maha Prabhu, Inc.*, 2008 WL 2559417, at \*3 (W.D.N.C. June 23, 2008) (finding that it was "clearly erroneous" for magistrate judge to grant a Rule 35 motion, as "there is no claim of specific psychiatric injury, but rather generalized feelings of distress" that do not

---

[2]    *See, e.g.*, *Hardin v. Mendocino Coast Dist. Hosp.*, 2019 WL 1493354, at \*2 (N.D. Cal. Apr. 4, 2019) ("Someone who has been hospitalized for emotional distress has likely suffered unusually severe emotional distress."); *Diunugala v. Dep't of Conservation*, 2018 WL 6137595, at \*2 (C.D. Cal. Jan. 31, 2018) (finding that standard allegations of "emotional pain" and "mental anguish" were "consistent" with "garden variety" emotional distress, but granting Rule 35 motion after plaintiff testified to "physical manifestations of his emotional distress that he says amount to 'irreversible disease,'" including "diabetes, blurry vision, extreme chest pains prompting emergency room visits, high blood pressure and chest pains, and concerns about heart attacks") (cited in Br. 28); *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 24-25 (D. Conn. 1994) (plaintiff alleged the use of defendants' drug caused permanent psychiatric harm, including becoming "psychologically unstable" and undergoing personality changes); *Thiessen v. Gen. Elec. Capital Corp.*, 178 F.R.D. 568, 570 (D. Kan. 1998) (plaintiff alleged defendants' conduct caused "real health problems," including water in his lungs, heart failure, and sleeplessness) (cited in Br. 23).

require "further investigation by a trained professional")(cited in Br. 27).  Unlike those plaintiffs, Mr. Conforti does not claim to have suffered any clinical mental health injuries or physical manifestations of his emotional distress caused by Defendants, or that he sought any treatment or therapy as a result of Defendants' conduct.  *See Hernandez*, 2014 WL 4090513, at *3 (finding that, while plaintiff had been "diagnosed with bipolar disorder" and "briefly hospitalized," "at no point does she claim that defendant's actions caused this disorder," and therefore "evidence of plaintiff's existing medical conditions and corresponding medications … is insufficient to establish that her mental condition is in controversy"); *O'Quinn v. N.Y. Univ. Med. Ctr.*, 163 F.R.D. 226, 228 (S.D.N.Y. 1995) (denying Rule 35 motion when a complaint only asserted a "boilerplate statement" of emotional distress and did not allege any "ongoing severe emotional harm").

Defendants wrongly assert that Mr. Conforti admitted in his interrogatory responses "that Defendants' alleged conduct necessitated him to seek out psychological care."  Br. 16.  Mr. Conforti has never made such a claim, and only stated in his interrogatory responses that he "has consulted with and been treated by two therapists" generally.  *See* Def. Ex. 9 at 9.  None of the medical records cited by Defendants (Br. 16) suggest that Mr. Conforti sought psychiatric treatment as a result of Defendants' discrimination, and Mr. Conforti has never made an allegation to the contrary, let alone sought redress for it.  The cases cited by Defendants where a litigant sought treatment or incurred serious injuries are therefore wholly distinguishable, and do not show that an error of law was made by Judge Waldor in denying the Rule 35 motion.[3]

---

[3]    *See Flores-Febus v. MVM, Inc.*, 299 F.R.D. 338, 340 (D.P.R. 2014) (granting Rule 35 motion against plaintiff who alleged physical symptoms and "conceded that her mental condition was in controversy," but denying it against plaintiff whose "allegations of emotional distress are much more generalized and do not enumerate particular mental injuries") (Br. 15); *Denny v. Wingspan Portfolio Advisors, LLC*, 2013 WL 2434572, at *2 (N.D. Tex. June 5, 2013) (plaintiff alleged that she was "diagnosed with major depressive disorder" and "received professional medical treatment" as a result of defendant's conduct, and "also concedes that her mental condition is in

In short, Defendants' appeal fails to understand that the "in controversy" requirement of Rule 35 is "not met by … mere relevance to the case."  *Schlagenhauf*, 379 U.S. at 118; *see also Kuminka*, 551 F. App'x at 29 ("mere conclusory allegations of the pleadings" and "mere relevance to the case" do not satisfy Rule 35).  Rather, satisfying the "in controversy" element "require[s] an affirmative showing by the movant that ***each condition*** as to which the examination is sought is ***really and genuinely in controversy***."  *Schlagenhauf*, 379 U.S. at 118 (emphasis added).  Defendants have not made this showing.  Mr. Conforti has pleaded and testified to only "garden variety," non-clinical emotional distress directly arising from an act of discrimination.  He does not bring a claim for intentional or negligent infliction of emotional distress or plan to call an emotional distress damages expert; nor does he assert that Defendants' conduct caused a specific mental or psychiatric injury or disorder or that the emotional distress he suffered was "unusually severe."  A "discriminating application" of the strictures of Rule 35 can reach no other result than that Mr. Conforti simply has not placed his mental condition "in controversy" in this matter.

### B.     Mr. Conforti's Gender Dysphoria Diagnosis Is Not "In Controversy" Here

*Second*, Judge Waldor also correctly found that Defendants failed to show that "Plaintiff's gender dysphoria diagnosis is 'in controversy' for purposes of adjudicating Plaintiff's discrimination claims and Defendants' affirmative defenses."  Rule 35 Order at 5.  Judge Waldor properly recognized that "at no point—either at the time that Defendants denied the hysterectomy or in the course of their defense of this action—have Defendants asserted that they refused to

---

controversy") (Br. 16); *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 164 (N.D. Cal. 2013) (plaintiff asserted "a claim for intentional infliction of emotional distress" and alleged that defendant "caused her to experience severe adverse mental and physical effects") (Br. 19); *Cauley v. Ingram Micro, Inc.*, 216 F.R.D. 241, 244 (W.D.N.Y. 2003) (plaintiff alleged that the defendant's conduct caused her to be "hospitalized and placed under the care of a physician") (Br. 16); *Dahdal v. Thorn Americas, Inc.*, 1998 WL 37532, at *2 (D. Kan. Jan. 28, 1998) (plaintiff testified that sexual harassment caused flashbacks and that she sought psychiatric treatment as a result) (Br. 16).

perform a hysterectomy because Plaintiff does not suffer from gender dysphoria." *Id.* Simply put, a discrimination claim arising from the undisputed denial of treatment for a mental condition does not place that mental condition "in controversy" for the purposes of Rule 35.

Defendants' *ex post facto* attacks on the process and procedures used to diagnose Mr. Conforti with gender dysphoria, made for the first time in the context of their Rule 35 motion, does not place the diagnosis "in controversy" here. Br. 22. It is beyond dispute that Defendants' refusal to provide medical services to Mr. Conforti in June 2015 was ***not*** premised on any concern over the validity or proof of Mr. Conforti's diagnosis of gender dysphoria; both parties agree that Mr. Conforti sought a hysterectomy as treatment for his gender dysphoria, and Defendants refused to allow that procedure to go forward on that basis. *See generally* Compl. ¶ 65 (hysterectomy was sought as "treatment of Jionni's gender dysphoria"); *id.* ¶ 69 (alleging that an e-mail from Defendant Father Martin Rooney specifically stated that SJH would not schedule Mr. Conforti's surgery "*based on the medical necessity for Gender Reassignment*" (emphasis added)).

The undisputed facts that Mr. Conforti is transgender and was diagnosed with gender dysphoria are patently insufficient to satisfy Rule 35; Defendants cite to no case where a transgender litigant was ordered to undergo a mental examination on such a paltry (and offensive) showing. *See Robinson v. HD Supply, Inc.*, 2013 WL 3815987, at *4 (E.D. Cal. July 19, 2013) (a pre-existing PTSD diagnosis was not "in controversy," as "the fact that [plaintiff] suffered from PTSD before he was hired by [defendant] as well as during the period of his employment is not disputed"). And at any rate, a Rule 35 mental examination on whether or to what extent Mr.

Conforti experienced or continues to experience gender dysphoria is even more removed and less relevant than his initial diagnosis, and certainly not "in controversy" here.[4]

More fundamentally, Mr. Conforti's claims do not require proof that he, in fact, suffered from gender dysphoria to show that Defendants' denial of access to medical care on the basis of Mr. Conforti's "sex, gender identity, transgender status, and nonconformity with sex stereotypes" violated federal and state law.  Compl. ¶ 99.  For the purposes of this case, it does not matter whether Mr. Conforti is transgender and suffers from gender dysphoria—though he is and he does.  It is blackletter law that, under both the ACA and the NJLAD, Defendants' mere **perception** that Mr. Conforti was transgender and suffered gender dysphoria, which is inextricably linked to his sex and transgender status, Compl. ¶¶ 28-29, is more than enough to support his discrimination claims.  *See, e.g.*, *K.S-A v. Hawaii, Dep't of Educ.*, 2018 WL 2144143, at *16 (D. Haw. May 9, 2018) ("[A] Title IX claim can be based on either actual gender or perceived nonconformance with gender stereotypes."); *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 355 (S.D.N.Y. 2014) ("anti-Semitic harassment can trigger responsibilities under Title VI ... when the harassment is based on the group's actual or perceived shared ancestry or ethnic characteristics"); *Cowher v. Carson & Roberts*, 40 A.3d 1171, 1178 (N.J. App. Div. 2012) ("if plaintiff can demonstrate that the discrimination … would not have occurred but for the perception that he was Jewish, his claim

---

[4]   To the extent Defendants' concern about the propriety of how gender dysphoria is diagnosed or the medical necessity of gender affirming treatment may be credited—and to be clear, it should not—such a broader issue need not and should not be addressed via an invasive and unnecessary independent medical examination of a singular plaintiff, but through more generalized expert testimony.  *See* 12/03 Hr'g Tr. 29:6-8 (arguing that the issue of proper medical treatments for gender dysphoria could "be dealt with through expert testimony separately and apart from an intrusive, invasive, and rare independent medical examination").  Defendants thus can address this issue through their experts, whose disclosures are due on August 18, 2020.  Dkt. 127.

is covered by the LAD"); N.J.S.A. 10:5-5(rr) (defining "Gender identity or expression" as "having or being perceived as having a gender related identity or expression…").

Defendants misconstrue the nature of Mr. Conforti's two discrimination claims by contending that his "inability to receive" a hysterectomy "forms the basis of his claims." Br. 19. Rather, at the heart of Mr. Conforti's causes of action is Defendants' **refusal** to provide Mr. Conforti with access to medical care "based on his sex, nonconformity with sex stereotypes, gender identity, and transgender status." *See* Compl. ¶¶ 88, 99. Defendants cite to absolutely no authority to support their contention that "standing" to raise a discrimination claim requires showing the "medical necessity" of the denied care. Br. 21. It does not. Federal law, for example, is violated any time a person is "excluded from participation in, [] denied the benefits of, or [] subject to discrimination under, any health program or activity" on the basis of sex. *See* Section 1557 of the ACA, 42 U.S.C. § 18116. Defendants cannot assert five years later that it was not discriminatory to do so if their hired expert determines that Mr. Conforti did not need a hysterectomy anyway.

Here, Defendants' reason for denying Mr. Conforti the ability to schedule a hysterectomy was in writing and has not changed: Defendants discriminated against Mr. Conforti because the hysterectomy was for "the medical necessity for Gender Reassignment." Compl. ¶ 8. In other words, the only reason for the denial provided by Defendants—either contemporaneously or advanced by counsel years later—was premised in Defendants' **knowledge or perception** that Mr. Conforti is transgender and suffers from gender dysphoria.[5] Defendants conceded this point at

---

[5]   Defendants' assertion that they were "forced … to prematurely file" their Rule 35 motion while "discovery … is evolving" has no merit either. Br. 21. ***First***, with the exception of Defendants' Rule 35 appeal, fact discovery in this case is complete, and by no means "evolving." ***Second***, Defendants cannot blame Judge Waldor for a proposed briefing schedule that was ***negotiated and agreed to by Defendants***. *See* Dkt. 93 (Defendants consenting to filing their Rule 35 Motion by July 22, 2019). Judge Waldor merely so-ordered the parties' proposed briefing schedule. *See* Dkt. 95 at 1-2. ***Third***, Defendants are in no position to complain about being "forced" to "prematurely

oral argument.  *See* 12/03 Hr'g Tr. 24:3-7 (Defendants "don't dispute that" a "perception" that someone is in a "protected category … could be actionable discrimination").  Because it is undisputed that Defendants did *not* base their refusal to allow the hysterectomy to be scheduled on any purported lack of "medical necessity" of the procedure, its actual necessity has no bearing on the facts or claims of this case.  If anything, Defendants seek a chance to explore *whether* there *could have been* a non-discriminatory reason to deny care based on the sufficiency of the underlying diagnosis—a defense that Defendants never raised and that they already admitted is not applicable.  *See* 12/03 Hr'g Tr. 10:1-8 (conceding that "obviously, we didn't examine [Mr. Conforti] to that degree at St. Joseph's … St. Joseph's couldn't do it because of the ERDs, and I know that's a separate issue that we don't need to get into").  Moreover, Defendants offer no explanation for how their hand-picked psychiatrist is qualified to gauge the medical necessity of Mr. Conforti's hysterectomy, or why a Rule 35 mental examination is needed to do so.

### C.   The District Court Should Disregard Defendants' New Evidence Of Mr. Conforti's Expert Reports On Appeal

*Third*, Defendants attempt to bolster their appeal by pointing to Mr. Conforti's expert reports, dated March 20, 2020, which:  (1) were not submitted on either the Rule 35 motion or the motion for reconsideration and cannot be considered on appeal here; and (2) in any event, do not offer any opinions on Mr. Conforti's gender dysphoria diagnosis or emotional distress such that either would now be "in controversy."

As an initial matter, Defendants' introduction of Mr. Conforti's expert reports in this appeal is entirely inappropriate and should be disregarded by the Court, as they are not part of the appellate record.  *See, e.g.*, *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("the district court is

---

file" their motion when discovery has been repeatedly delayed, yet Defendants waited *two-and-half years after* this case began to file their Rule 35 motion.

not permitted to receive further evidence; it is bound by the clearly erroneous rule"); *Horner v. Cummings*, 2015 WL 13613261, at *3 (M.D. Pa. Oct. 27, 2015) ("Plaintiff principally relies upon a new expert affidavit .... the Court is not permitted to consider new evidence on appeal that was not presented to the Magistrate Judge"); *Kendricks v. Hertz Corp.*, 2006 WL 3404566, at *1 (D.V.I. Oct. 30, 2006) ("The Court finds that it would be inappropriate to consider new evidence that was not before the Magistrate Judge in making a determination on whether the Magistrate Judge's ruling was clearly erroneous or contrary to law."). Indeed, Defendants recognize as much. Br. 20 n.2 (acknowledging "a district court will generally not consider new evidence on appeal"). Accordingly, the Court should refuse to "take into consideration" the expert reports that were "not put forth before the magistrate judge when reviewing the magistrate judge's factual determination." *Berardino*, 2017 WL 1084523, at *2; *see also In re Gabapentin*, 312 F. Supp. 2d at 661 (on an appeal of a magistrate judge's order, "the district court is bound by the clearly erroneous rule in reviewing questions of fact, and it is not permitted to receive further evidence"). Nor did Defendants ever attempt to supplement the record, as Mr. Conforti served his expert reports on March 20, 2020, well before Judge Waldor entered her Reconsideration Order.

Even if the Court were to consider Mr. Conforti's expert reports on this appeal, Defendants fail to show how they satisfy the "in controversy" requirement of Rule 35, as none of the reports suggest that Judge Waldor erred by finding that "Plaintiff has not placed his depression and anxiety 'in controversy'" to justify a Rule 35 examination. Rule 35 Order at 4. Defendants' contention that Mr. Conforti's use of experts Dr. Ettner and Dr. Schechter at trial entitles them to conduct a mental examination has no basis in law or fact, as neither Dr. Ettner nor Dr. Schechter will opine on the emotional distress Mr. Conforti suffered as a result of Defendants' discrimination. That their reports may touch on mental conditions associated with gender dysphoria does not put Mr.

Conforti's mental condition "in controversy." *See Montana*, 2013 WL 5724486, at *4 (where a report may "reference emotional distress," the doctor was not being offered as an expert on mental injuries and thus, for that and other reasons, the plaintiff's mental status was not in controversy).

In *Montana I*, for example, the defendants requested a mental examination of the plaintiff because they contended a "workplace bullying or mobbing" expert put the plaintiff's mental health in controversy. 2013 WL 1750002, at *1. The court found that the expert report did not place the plaintiff's mental condition in controversy, as it focused on the defendants' actions, and not the plaintiff's mental health, as "evidenced by the fact that plaintiff was not examined by [the expert] and never spoke with him." *Id.* at *3. This Court should reach the same conclusion.

Here, Dr. Ettner and Dr. Schechter are not providing testimony on Mr. Conforti's mental health. Dr. Ettner is only providing expert testimony on: "(i) information regarding the nature of sex, gender identity, and gender dysphoria; (ii) information regarding the best practices and the accepted standards of care for individuals with gender dysphoria, including the efficacy of gender confirmation surgery (previously referred to as sex reassignment surgery); and (iii) the impact that the provision or denial of treatment for gender dysphoria has on transgender individuals." Def. Ex. 17 ¶ 2. Dr. Schechter, a plastic surgeon, Def. Ex. 18 ¶ 4, is only providing expert testimony on: "(i) the nature of gender dysphoria; (ii) the standards of care for treating individuals diagnosed with gender dysphoria; (iii) whether gender confirmation surgeries are appropriate and medically necessary for the treatment of transgender people's gender dysphoria; and (iv) the ethical duty of doctors to provide appropriate, medically-necessary treatment to patients." Def. Ex. 18.[6]

---

[6]   Defendants also reference that Mr. Conforti intends to rely on testimony from his health care providers. Br. 24. But these health care providers are not being offered as experts in this case. *See Bowen*, 214 F.R.D. at 194-95 (finding mental status not in controversy, noting that a doctor would testify as a treating physician and not as an expert).

Like in *Montana*, this expert testimony does not focus on Mr. Conforti's mental health, but on the nature of gender dysphoria and the standard of care for people with gender dysphoria, which go to ***Defendants' conduct*** in this case.  Moreover, neither Dr. Ettner nor Dr. Schechter examined Mr. Conforti or have ever spoken with him.  Def. Ex. 17 at 4 (Dr. Ettner: "I have not met or spoken with the Plaintiff for purposes of this report."); Def. Ex. 18 at 6 (Dr. Schechter: "I have not met or spoken with the plaintiff in this case for purposes of this report.").  And both reports specifically represent that, because they have not "met with or evaluated Mr. Conforti," the experts do not "offer any specific opinions about the effects the denial of a hysterectomy by the defendant might have had on Mr. Conforti."  Def. Ex. 18 at 6 n.3; Def. Ex. 17 at 19 n.1.

Defendants' apparent objection to Judge Waldor taking into account Mr. Conforti's representation that he does not plan to offer expert testimony at trial to support his claim for emotional distress damages is also confounding.  Br. 23.  The "plaintiff's offer of expert testimony to support a claim of emotional distress" is one of five factors in which a mental condition will be considered to have been placed "in controversy" under Rule 35.  *Bowen*, 214 F.R.D. at 193; *see* Def. Br. 15.  Judge Waldor, in considering these five circumstances, noted that "Plaintiff does not plan to offer expert testimony to support his emotional distress damages," and then independently considered the other factors that could potentially support a finding that Mr. Conforti's mental condition was in controversy.  Rule 35 Order at 3.  Judge Waldor did not state or imply that Mr. Conforti's decision not to offer expert testimony on his emotional distress damages "preclude[s] a court from compelling a mental examination."  Br. 23.  Rather, Judge Waldor simply found that none of the other factors were present either.  Rule 25 Order 3-5.  That finding, coupled with Mr. Conforti's representation that he would not introduce expert testimony to support its emotional distress damages, renders a Rule 35 mental examination improper.

### III.   THE MAGISTRATE JUDGE CORRECTLY FOUND THAT DEFENDANTS FAILED TO ESTABLISH "GOOD CAUSE"

Defendants argue "good cause exists for an independent mental examination of Conforti because the examination will likely adduce facts highly relevant to the defense of his discrimination and emotional distress claims." Br. 25. Defendants argued identically before Judge Waldor (Dkt. 97 at 13-14), who correctly rejected this argument, because "*Schlagenhauf* makes clear that relevance is an insufficient basis for a finding of good cause." Rule 35 Order at 5; *see Schlagenhauf*, 379 U.S. at 118 ("The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b)."). Judge Waldor's decision is clearly in line with *Schlagenhauf*, the prevailing authority on the "good cause" standard.

Defendants have not shown Judge Waldor's decision to be clearly erroneous or an abuse of discretion otherwise. *See Rhett v. New Jersey*, 2007 WL 1456199, at *1-2 (D.N.J. May 14, 2007) ("Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion."). Defendants disagree with Judge Waldor's determination that Defendants had less intrusive means available to them to explore Mr. Conforti's mental condition. Br. 27. That finding, however, was supported by Defendants' possession of "medical records for January 11, 2011 through August 23, 2018 from Plaintiff's relevant medical providers," and by Defendants' deposition of multiple medical providers, including "the doctor who diagnosed Plaintiff with gender dysphoria," "the psychologist who treated Plaintiff in the runup [sic] and aftermath to Plaintiff's gender reassignment surgery," and Mr. Conforti's "primary care doctor." Rule 35 Order at 6. It was well within Judge Waldor's discretion to find this was enough discovery to obtain the desired information. *Schlagenhauf*, 379 U.S. at 118 ("The ability of the movant to obtain the desired information by other means is also relevant."); *see also Maha*

*Prabhu*, 2008 WL 2559417, at \*4 (reversing magistrate judge's grant of Rule 35 motion, as "no good cause exists" for a "wide-ranging intrusion into [plaintiff's] privacy … especially where the opportunity to have questioned [plaintiff] through deposition and interrogatories has passed").

Further, "*[e]ven when good cause is shown*, whether to order a proposed examination is committed to the discretion of the court." *Shirsat v. Mutual Pharm. Co.*, 169 F.R.D. 68, 70 (E.D. Pa. 1996) (emphasis added); *accord King v. Mansfield Univ. of Pa.*, 2014 WL 563323, at \*1 (M.D. Pa. Feb. 11, 2014). In the exercise of this discretion, Judge Waldor also properly took into account that Defendants did not produce any evidence regarding Dr. Reeves's qualifications or ability to reevaluate the diagnostic techniques and treatment used by Mr. Conforti's providers. Rule 35 Order at 8. Defendants portray this as a ruling by Judge Waldor that "Dr. Reeves is not qualified to conduct a mental examination." Br. 28. Not so. In response to Defendants' argument criticizing Dr. Tang's and Batista's diagnosis of gender dysphoria, Dkt. 120 at 9-10, which Judge Waldor found "conclusory" in its implication that they "raised questions that can only be answered by allowing Dr. Reeves to conduct his own examination," Judge Waldor correctly considered the lack of evidence that Dr. Reeves's examination would be able to reevaluate Dr. Tang's and Batista's diagnostic techniques and treatment protocols at this stage of the litigation. Considering the absence of any such showing in its good cause analysis was within Judge Waldor's discretion.

## IV. ORDERING A RULE 35 MENTAL EXAMINATION AS A CONDITION OF BRINGING DISCRIMINATION CLAIMS IS CONTRARY TO PUBLIC POLICY

As noted, Mr. Conforti asserts only generalized, non-medical allegations of distress in support of his "garden variety" damages request. But under Defendants' position, *any* plaintiff bringing a standard discrimination claim and who had previously visited a therapist should be forced to endure an invasive Rule 35 examination. Such a warrantless expansion of a highly invasive discovery mechanism would set dangerous precedent for all victims of discrimination.

As Defendants would have it, any time a transgender person brings a lawsuit for the discrimination they have endured, they could be subject to a Rule 35 examination if they had sought mental health treatment in the past. That simply cannot be the case—courts have recognized that "a plaintiff should not be effectively punished for seeking treatment" by being compelled to undergo a Rule 35 examination, "particularly when that treatment was initially sought (as it was here) *prior* to the onset of litigation." *Winstead*, 315 F.R.D. at 616 n.3 (emphasis added). Already nearly a quarter of transgender people do not seek health care they need "due to fear of being disrespected or mistreated as a transgender person,"[7] and over 40% of Americans have seen a mental health professional at some point in their lives.[8] The mere fact that someone is transgender and previously sought mental health treatment should not be used as a weapon to subject them to a Rule 35 examination as a condition of seeking "standard" emotional distress damages "typically sought in discrimination cases." Rule 35 Order at 4.

Courts have recognized that these concerns are a "good reason for such restraint":

> Extraordinarily intrusive as they invariably are, such orders would have an unwarranted chilling effect on persons who believe that they have been subjected to unlawful discrimination if they faced a physical or mental examination anytime they sought redress for such perceived discrimination.

*Benham*, 2007 WL 8042488, at *2 (reversing order granting Rule 35 motion for plaintiff who "makes a claim for the same type of distress or humiliation attendant to any 'garden-variety' claim of discrimination"). "'To hold otherwise would mean that such examinations could be ordered routinely' in cases where there is a claim of damages for emotional distress." *Cody v. Marriott*

---

[7]   *See* Sandy E. James et al., Nat'l Ctr. for Transgender Equality, *The Report of the 2015 U.S. Transgender Survey* at 98 (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf.

[8]   Barna Grp., *Americans Feel Good About Counseling* (Feb. 27, 2018), https://perma.cc/H4PB-22PT.

*Corp.*, 103 F.R.D. 421, 422 (D. Mass. 1984) (citation omitted).  "The plain language of Rule 35

precludes such an untoward result." *Schlagenhauf,* 379 U.S. at 122.

## V. DEFENDANTS FAILED TO ESTABLISH DR. REEVES'S QUALIFICATIONS UNDER RULE 35

Finally, Defendants again mischaracterize the proceedings by claiming that Judge Waldor

"*sua sponte*" questioned Dr. Reeve's qualifications on evaluating a gender dysphoria diagnosis in

error.  Br. 28.  Mr. Conforti *did* challenge Dr. Reeve's credentials.  12/03 Hr'g Tr. 20:22-21:2

(arguing that Defendants provided "very little [to] no information about who the medical examiner

is and whether that person has any experience at all with transgender patients, let alone diagnosing

gender dysphoria").  Regardless, it was Defendants' burden to meet the requirements of their own

Rule 35 motion, including by:  (1) showing that the mental examination will be conducted by "a

*suitably* licensed or certified examiner"; and (2) "specify[ing] the … person or persons who will

perform it."  Fed. R. Civ. P. 35(a)(1), (2)(B) (emphasis added); *see also id.*, advisory committee's

note (1991 amend.) (noting that the "new requirement" that the examiner be "suitably licensed" is

"intended to encourage the exercise of [a court's] discretion" and "expressly authorize[s]" courts

"to assess the credentials of the examiner to assure that no person is subjected to a court-ordered

examination by an examiner whose testimony would be of such limited value that it would be

unjust to require the person to undergo the invasion of privacy associated with the examination").

Defendants' assertion that Dr. Reeves' qualifications can only be challenged *after* the

invasive examination is conducted has no basis in Rule 35 and flies in the face of logic.  Br. 29.

While that may be true for typical expert testimony under Federal Rule of Evidence 702, that is

not the applicable standard for Rule 35, which would call for Dr. Reeves to examine Mr. Conforti's

present mental state.  Whether Dr. Reeves is qualified to serve as an expert witness is not the issue

today; rather, Judge Waldor properly considered whether Defendants made the requisite showings

to satisfy Rule 35, including that the examiner chosen was "suitably licensed or certified."  Fed. R. Civ. P. 35(a)(1); *see also* 12/03 Hr'g Tr. 29:3-10 (arguing that the issue of proper medical treatments for gender dysphoria could "be dealt with through expert testimony separately and apart from an intrusive, invasive, and rare independent medical examination").

Defendants made no effort (either now or on the original motions) to show that Dr. Reeves was "suitably" licensed in the context of this case to  re-investigate an over six-year-old gender dysphoria diagnosis.  Dr. Reeves' declaration shows that he has no specific expertise with gender dysphoria beyond the general "field of psychiatry" and "participat[ing] in a statewide lecture" on gender dysphoria once in 2014.  Def. Ex. 14 ¶ 4.  Dr. Reeves appears to concede as much, as he only plans to take a "history of Plaintiff's alleged gender dysphoria" (*id.* ¶ 6)—information which Defendants (and consequently, Dr. Reeves) ***already*** have and does not necessitate a Rule 35 examination.  Nor do Defendants make any showing that Dr. Reeves is suitably licensed to examine Mr. Conforti on other (irrelevant) topics such as "the effectiveness" of the hysterectomy Mr. Conforti sought.  *Id.*  In short, neither the Declaration nor Dr. Reeves' curriculum vitae help Defendants to show clear error in Judge Waldor's finding that Defendants failed to prove that Dr. Reeves is suitably qualified to conduct a Rule 35 examination of Mr. Conforti.

## <u>CONCLUSION</u>

Defendants' appeal from the Magistrate Judge's January 22, 2020 and March 30, 2020 Orders should be denied.

DATED:  July 6, 2020                                        Respectfully submitted,

<div style="margin-left: 40%;">

By:  s/ *Jaclyn M. Palmerson*

Jaclyn M. Palmerson (N.J. Bar No. 209452016)
Todd Anten (*pro hac vice*)
Thomas L. Barnes (*pro hac vice*)
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
51 Madison Avenue, 22nd Floor

</div>

New York, New York 10010-1601
t: (212) 849-7000

Omar Gonzalez-Pagan (*pro hac vice*)
Carl S. Charles (*pro hac vice*)
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
t: (212) 809-8585
*Attorneys for Plaintiff Jionni Conforti*

**CERTIFICATE OF SERVICE**

I, Jaclyn M. Palmerson, hereby certify that, on July 6, 2020, I served true and correct copies

of Plaintiff's Opposition to Defendants' appeal from the Magistrate Judge's January 22, 2020 and

March 30, 2020 Orders on the following counsel of record by ECF:

> Christopher Sawyer Mayer, Esq.
> Thomas F. Doherty, Esq.
> McCarter & English, LLP
> Four Gateway Center
> 100 Mulberry Street
> Newark, NJ 07102
> (973) 622-4444
> Email: cmayer@mccarter.com
> Email: tdoherty@mccarter.com


> */s/ Jaclyn M. Palmerson*
> Jaclyn M. Palmerson

2