UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JIONNI CONFORTI,<br><br>Plaintiff,<br><br>v.<br><br>ST. JOSEPH'S HEALTHCARE SYSTEM, INC.; ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER D/B/A ST. JOSEPH'S REGIONAL MEDICAL CENTER; and FATHER MARTIN D. ROONEY,<br><br>Defendants. | Honorable Claire C. Cecchi, U.S.D.J.<br>Honorable Cathy L. Waldor, U.S.M.J.<br><br>Case No. 2:17-cv-00050 (CCC/CLW)<br><br>Motion Day:  July 20, 2020 |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' APPEAL FROM
MAGISTRATE JUDGE'S JANUARY 22, 2020 AND MARCH 30, 2020
OPINIONS AND ORDERS**

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendants St. Joseph's
Health, Inc., St. Joseph's University Medical
Center, Inc., and Father Martin D. Rooney

Of Counsel and on the Brief,
    Christopher S. Mayer, Esq.
    Thomas F. Doherty, Esq.

ME1 33803445v.5

-i-

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT

JUDGE WALDOR ERRED BY DENYING DEFENDANTS' MOTION TO COMPEL .............2

    I.     Judge Waldor Did Not Apply The Correct Legal Standard When She Denied Defendants' Motion To Compel And Motion For Reconsideration. ..........2

    II.    Conforti Has Placed His Mental Condition Is "In Controversy." ...........................3

        A.    Conforti Attributes Specific Psychiatric And Emotional Injuries To Defendants' Alleged Discriminatory Conduct. ........................4

        B.    Conforti's Underlying Psychological Disorder Of Gender Dysphoria Also Places Conforti's Mental Condition "In Controversy." ..................................................................................................7

    III.   Defendants Established Good Cause For The Rule 35 Examination. .....................9

    IV.   Public Policy Does Not Outweigh Defendants' Right To Conduct The Examination. ...........................................................................................................10

    V.    Dr. Reeves Is Qualified To Conduct The Examination. .......................................11

CONCLUSION ....................................................................................................................12

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anjelino v. N.Y. Times Co.*,
   200 F.3d 73 (3d Cir. 1999)..................................................................................8

*Benham v. Rice*,
   2007 WL 8042488 (D.D.C. Sept. 14, 2007) ......................................................11

*Bird v. Borough of Moosic*,
   2020 WL 1904454 (M.D. Pa. Apr. 17, 2020) ..................................................3, 4

*Bowen v. Parking Authority of Camden*,
   214 F.R.D 188 (D.N.J. 2003)............................................................................5, 7

*Cauley v. Ingram Micro, Inc.*,
   216 F.R.D. 241 (W.D.N.Y. 2003)......................................................................11

*Denny v. Wingspan Portfolio Advisors, LLC*,
   2013 WL 2434572 (N.D. Tex. June 5, 2013) .....................................................4

*Eckman v. Univ. of R.I.*,
   160 F.R.D. 431 (D.R.I. 1994) ............................................................................10

*E.E.O.C. v. 704 HTL Operating, LLC*,
   2012 WL 12870350 (D.N.M. July 25, 2012)......................................................5

*Franco v. Bos. Sci. Corp.*,
   2006 U.S. Dist. LEXIS 81425 (N.D. Cal. Oct. 27, 2006)................................6, 7

*Jackson v. Chubb Corp.*,
   193 F.R.D. 216 (D.N.J. 2000).............................................................................3

*Jefferys v. LRP Publications, Inc.*,
   184 F.R.D. 262 (E.D. Pa. 1999).........................................................................12

*June Med. Servs. L. L. C. v. Russo*,
   2020 WL 3492640 (U.S. June 29, 2020) ............................................................8

*Karrani v. JetBlue Airways Corp.*,
   2019 WL 2269818 (W.D. Wash. May 28, 2019).................................................4

*McLaughlin v. Atl. City*,
   2007 WL 1108527 (D.N.J. Apr. 10, 2007) .........................................................9

*Montana v. Cty. of Cape May Bd. of Freeholders*,
  2013 WL 5724486 (D.N.J. Oct. 18, 2013) ("*Montana II*") ..........................................4, 6, 7, 11

*Montana v. Cty. of Cape May Bd. of Freeholders*,
  2013 WL1750002, at *4 (D.N.J. Apr. 22, 2013) ("*Montana I*") ......................................7, 9, 11

*Newman v. San Joaquin Delta Cmty. Coll. Dist.*,
  272 F.R.D. 505 (E.D. Cal. 2011) .......................................................................................12

*Ragge v. MCA/Universal Studios*,
  165 F.R.D. 605 (C.D.Cal. 1995) .......................................................................................11

*Rega v. Beard*,
  2010 WL 2404420 (W.D. Pa. June 10, 2010)......................................................................9

*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964).............................................................................................................4

*Thiessen v. GE Capital Corp.*,
  178 F.R.D. 568 (D. Kan. 1998)............................................................................................6

*Turner v. Imperial Stores*,
  161 F.R.D. 89 (S.D.Cal. 1995) ............................................................................................4

*Winstead v. Lafayette Cty. Bd. of Cty. Commissioners*,
  315 F.R.D. 612 (N.D. Fla. 2016) .........................................................................................5

**RULES**

Fed. R. Civ. P. 35(a) ...................................................................................................................1

## PRELIMINARY STATEMENT

Defendants St. Joseph's University Medical Center, Inc., St. Joseph's Health, Inc., and Father Martin Rooney ("Defendants") submit this reply brief in further support of their appeal from Magistrate Judge Waldor's opinions and orders dated January 22, 2020 and March 30, 2020 that erroneously denied their motion pursuant to Fed. R. Civ. P. 35(a) to compel Plaintiff Jionni Conforti ("Plaintiff" or "Conforti") to undergo a mental examination by a licensed psychiatrist.

In his opposition, Conforti again seeks to distance himself from his complaint, his testimony and his medical records to avoid further discovery into fundamental issues. Starting with his complaint, Conforti affirmatively placed his mental condition in controversy by (a) alleging that his previously-diagnosed psychiatric injuries were caused by Defendants' alleged discriminatory conduct, (b) seeking emotional distress damages as his sole alleged damages, and (c) predicating his claims and the relief sought upon his psychiatric disorder.

Contrary to his opposition, there is nothing "garden variety," "standard," or "colloquial" about Conforti's diagnosed depression and anxiety. Nor can this case be neatly characterized as a "standard" discrimination case. Even one of Conforti's proffered experts recognizes that his transgender status is inseparable from his diagnosis of gender dysphoria. The expert reports and allegations in his complaint show that he can only sustain his claims (putting aside the important religious freedoms that Plaintiff seeks to trample upon) if Defendants unlawfully denied a "medically necessary" surgery; the necessity of the surgery derives from the severity of the underlying disorder. Conforti's mental condition is so intertwined with the claims and defenses in this matter that depriving Defendants of the opportunity to explore his mental condition through an independent examination defies reason and fundamental fairness.

Defendants established good cause for the examination. Judge Waldor rejected legitimate, well-settled justifications for the examination, including, but not limited to, Conforti's

complex psychological and emotional history and multiple causes of his emotional distress other than Defendants' conduct. As shown in Defendants' opening brief, a narrowly tailored examination of Conforti's mental condition, extensive medical history, and the cause and extent of his emotional distress damages is justified and critical to the defense against his claims.

Lastly, Defendants satisfied Rule 35 by engaging Dr. Reeves, a board certified psychiatrist, to perform the proposed examination of Conforti. If Dr. Reeves is prevented from conducting a medical examination of Conforti, it would leave Conforti free to tell a jury that Defendants' conduct caused him anxiety, depression, and other psychiatric and mental injuries (including "upset" and "hurt" that lingered through at least his 2019 deposition), leaving Defendants to cross-examine Conforti on an incomplete record. Dr. Reeves possesses extensive experience in the field of psychiatry, with relevant experience on the topic of gender dysphoria, and is suitably licensed to assess the "effectiveness" of the total hysterectomy, including Conforti's ongoing psychological and emotional disorders and distress allegedly attributable to the denial of the surgery. Conforti's claim that he raised this issue below is inaccurate but also irrelevant given that Defendants satisfied their burden under Rule 35.

Accordingly, Defendants respectfully submit that Judge Waldor's January 22, 2020 and March 30, 2020 Order should be reversed.

### ARGUMENT

### JUDGE WALDOR ERRED BY DENYING DEFENDANTS' MOTION TO COMPEL

**I.     Judge Waldor Did Not Apply The Correct Legal Standard When She Denied Defendants' Motion To Compel And Motion For Reconsideration.**

Conforti's opposition misstates Defendants' argument regarding the applicable legal standard and the apparent inconsistencies in Judge Waldor's rulings. In granting (in part) the motion to compel the depositions of certain medical providers, Judge Waldor concluded that Conforti suffered from a complex emotional and psychological history that could not be neatly

characterized as "garden variety." *See* D.E. 104 at p. 7.  To reach that conclusion, the Magistrate balanced the parties' interests in this case and specifically addressed whether Conforti, based on the allegations in his complaint, placed his mental or emotional condition at issue. *See Jackson v. Chubb Corp.*, 193 F.R.D. 216, 220 (D.N.J. 2000).  Judge Waldor weighed Defendants' right to discovery against Plaintiff's privacy interests and concluded that Defendants must be afforded the opportunity to explore Conforti's complex emotional and psychological issues. *See* D.E. No. 104 at p. 6-8, 11.  Given that Judge Waldor previously held that Conforti's alleged emotional distress was not garden variety, Defendants merely ask that this holding be applied consistently with respect to the proposed Rule 35 examination, leading to the inevitable conclusion that his mental condition is in issue in this case (as it obviously is).

Judge Waldor did not reach her prior decision solely based upon "temporal proximity and relevance," as Conforti now contends. With respect to Vincent Fitzgerald, LCSW, Judge Waldor expressed concern about the fact that Conforti was still treating with Fitzgerald. *See* D.E. 104 at p. 10.  But Judge Waldor made no reference to temporal proximity when addressing Defendants' request to depose Nurse Mary Vitale or Ms. Rissy Batista, with whom Conforti treated in 2017. *See, e.g.*, D.E. 104 at p. 5; *see also* Mayer Decl., Exh. 7, BATISTA061-62.  Instead, Judge Waldor's prior findings were predicated upon Conforti's complex medical history and the relevance of that history to the claims and defenses asserted in this matter.  Accordingly, Judge Waldor erred when she found that Conforti's mental condition was not "in controversy" in her January 22nd and March 30th opinions and orders.

## II. Conforti Has Placed His Mental Condition "In Controversy."

Conforti's opposition conflates the many ways in which a party's "mental condition" may be placed "in controversy" for the purposes of Rule 35.  A plaintiff can place his mental condition in controversy through his pleadings. *Bird v. Borough of Moosic*, 2020 WL 1904454,

at *2 (M.D. Pa. Apr. 17, 2020); *see also Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). Or, in cases where a defendant seeks to place the plaintiff's mental state at issue, the defendant may satisfy the "in controversy" requirement through deposition testimony, medical records, or other evidence. *Bird*, 2020 WL 1904454, at *2 (citing *Womack v. Steens Transp., Inc.*, 205 F.R.D. 445, 446 (E.D. Pa. 2001)). As shown below, it is apparent from Conforti's complaint that his mental condition is in controversy, which alone warrants a Rule 35 examination. In addition, the deposition testimony, discovery responses, medical evidence, and proffered expert opinions all confirm that his mental condition is in controversy and warrant reversal of Judge Waldor's decisions and orders denying Defendants' request for a Rule 35 examination.

### A. Conforti Attributes Specific Psychiatric And Emotional Injuries To Defendants' Alleged Discriminatory Conduct.

A plaintiff can affirmatively place his mental condition "in controversy" when he "alleges a permanent or ongoing mental disorder or emotional distress or claims that she has required psychiatric or psychological care as a consequence of discriminatory treatment." *Denny v. Wingspan Portfolio Advisors, LLC*, 2013 WL 2434572, at *1 (N.D. Tex. June 5, 2013). The cases cited by Conforti and Judge Waldor support this proposition. *See Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D.Cal. 1995) (permitting mental examinations where cases involve allegations of a "specific mental or psychiatric injury or disorder.").

Despite his efforts to distance himself from his own allegations, Conforti claims specific psychiatric injuries—deep depression and great anxiety—as a result of Defendants' alleged discriminatory conduct, which rises to a level beyond "garden variety" emotional distress based upon the cases cited by Conforti and Judge Waldor. *See, e.g.*, *Montana v. Cty. of Cape May Bd. of Freeholders*, 2013 WL 5724486, at *3, *6 (D.N.J. Oct. 18, 2013) ("*Montana II*"); *Karrani v. JetBlue Airways Corp.*, 2019 WL 2269818, at *3 (W.D. Wash. May 28, 2019) (acknowledging

-4-

"that in certain cases, 'anxiety' constitutes a psychological condition more severe than 'garden-variety' emotional distress."). Conforti alleges as follows:

- "***As a result of this denial of access to medically necessary treatment***,…Jionni felt betrayed by St. Joseph's Healthcare and became ***deeply depressed***. In addition, this denial caused Jionni ***great anxiety***….he also became, and remains, ***anxious*** about visiting either SJRMC's Paterson hospital or SJW…. ***Due to the discrimination*** he suffered at the hands of St. Joseph's Healthcare, Jionni experiences ***significant distress*** at the thought of having to attend either facility in the event of an emergency or otherwise…." See Pl.'s Compl. at ¶ 9.

- "***If not properly treated***, gender dysphoria may result in ***psychological distress, anxiety, depression***, and even ***self-harm or suicidal ideation***" See id. at ¶ 34.

- "Jionni was ***also depressed*** that ***after his long search to find a surgeon who could perform the surgery***,…Jionni also ***felt anxiety*** at having to search for a new surgeon…." See id. at ¶ 73.

Conforti's medical records further establish that he suffered from and continues to suffer from ***diagnosed*** psychiatric injuries, *see*, *e.g.*, Mayer Decl., Exh. 7, BATISTA034-35, identified in the standard Diagnostic and Statistical Manual of Mental Disorders ("DSM"). *See E.E.O.C. v. 704 HTL Operating, LLC*, 2012 WL 12870350, at *5 (D.N.M. July 25, 2012) (finding unusually severe emotional distress where alleged injuries were specifically diagnosable in the DSM-IV). For these reasons, the cases cited by Conforti, such as *Winstead v. Lafayette Cty. Bd. of Commr.*, 315 F.R.D. 612 (N.D. Fla. 2016), are distinguishable and Judge Waldor's characterization of Conforti's emotional distress as "standard" is again inconsistent with her prior ruling.

It is also unlikely that Conforti will limit his testimony at trial about his ongoing psychiatric disorders or emotional distress to a so-called "colloquial" manner.[1] ***To date, Conforti has not conceded that his emotional distress has ended or that he seeks only past emotional distress damages.*** Unlike *Bowen v. Parking Authority of Camden*, 214 F.R.D 188

---

[1] At oral argument on the motion to quash, Conforti's counsel made the same argument – that he experienced depression "of colloquial sense" as evidenced by his deposition testimony. *See* Mayer Decl., Exh. 11, at 30:6-11. ***Yet, after considering this testimony, Judge Waldor did not***

-5-

(D.N.J. 2003) and *Montana II*, Defendants' alleged wrongful conduct occurred in June 2015, yet Conforti testified at his deposition four years later that he still felt emotionally "hurt" and "upset" and suffered "some depression" due to Defendants' conduct. *See* Mayer Decl., Exh. 2, 162:4-163:2. Judge Waldor abused her discretion by ignoring persuasive authority when she dismissed this testimony, also supported by medical evidence, as purely "colloquial." *See Thiessen v. GE Capital Corp.*, 178 F.R.D. 568, 570 (D. Kan. 1998) (compelling examination where "plaintiff testified that he experienced, and still experiences, periods of great sadness or depression as a result of defendants' actions."); *Franco v. Bos. Sci. Corp.*, 2006 U.S. Dist. LEXIS 81425, at *4 (N.D. Cal. Oct. 27, 2006) (compelling examination where plaintiff alleged that she has suffered and continues to suffer emotional distress due discriminatory conduct).

Like the allegations in his complaint, Conforti is now distancing himself from his interrogatory answers by stating that he only treated with Fitzgerald and Batista "generally." *See* Mayer Decl., Exh. 9, Rog. No. 5 ("With regard to the allegations in Paragraphs 90 and 101 of the Complaint that Plaintiff has 'suffered emotional distress…' identify any physician, psychiatrist, psychologist, social worker, hospital or any other medical institution or practitioner with whom Plaintiff has treated or consulted for such alleged injuries."). This argument overlooks his other health care providers, such as Mary Vitale, with whom he treated *after* the incident. *See*, *e.g.*, Mayer Decl., Exh. 6, VITALE00001. If this Court accepts Conforti's assertions as true – that none of his records suggest that he sought psychiatric treatment as a result of Defendants' discrimination, *see* Opp. Br. at p. 17 – then he cannot rely upon his treatment, including his medical records, to support his claims unless Dr. Reeves is afforded the same opportunity to examine Conforti. *See Montana II*, 2013 WL 5724486, at *2 (affirming denial of Rule 35

***find that Conforti has testified or will testify about his depression or anxiety in a "colloquial" sense and found that his emotional distress could not be neatly reduced to "garden variety."***

-6-

ME1 33803445v.5

examination where the plaintiff would not use mental health records, or call a mental health expert, at trial).[2]

Likewise, if Dr. Reeves is denied the opportunity to examine Conforti, Conforti cannot present any expert testimony that has any bearing on his alleged emotional distress, including the psychological and emotional effects of denying the surgery. *See Bowen*, 214 F.R.D. at 194 n.6 (noting that "[h]ad the plaintiff planned to present an expert at trial, the court's decision may well have come down in favor of the examination."). Permitting Conforti to present evidence other than his own "colloquial" testimony, as he has repeatedly promised, would be unfair.

### B. Conforti's Underlying Psychological Disorder Of Gender Dysphoria Also Places Conforti's Mental Condition "In Controversy."

Defendants do not seek a Rule 35 examination simply because Conforti is transgender. Defendants have ***never*** made such an assertion. ***As stated by his own experts***, Conforti's underlying diagnosis of gender dysphoria and his status as a transgender person are inextricably linked. *See* Mayer Decl., Exh. 17 at ¶¶ 20-21 ("The medical diagnosis for that feeling of incongruence and accompanying distress is 'gender dysphoria,' a serious medical condition, formerly known as 'gender identity disorder' ("GID")."). Conforti repeatedly testified at his deposition that he sought the surgery solely to treat "GID" or gender identity disorder and that he was denied surgery despite its medical necessity. *See* Mayer Decl, Exh. 2, 132:15-24, 134:6-9. Conforti's psychological disorder bears directly on his claims that Defendants' unlawfully denied him medically necessary care, just like a plaintiff who alleges that his employer discriminated against him on the basis of his underlying mental disability. *See Montana v. Cty. of Cape May Bd. of Freeholders*, 2013 WL 1750002, at *4 (D.N.J. Apr. 22, 2013) ("*Montana I*")

---

[2] Conforti's request that this Court overlook his extensive treatment history with Fitzgerald and Batista as too temporally distinct to be relevant is contrary to persuasive authority. *See Franco*, 2006 U.S. Dist. LEXIS 81425, at *5 (compelling examination where the plaintiff "has had a long

-7-

(acknowledging that where, as here, a plaintiff alleges that he suffered discrimination based upon a psychological or mental disease the plaintiff's mental condition is "in controversy") (citing *Mandujano v. Geithner*, 2011 WL 825728, *11 (N.D. Cal. Mar. 7, 2011), applying the *Turner* factors and finding that the plaintiff's mental condition was "in controversy" where he alleged discrimination based on a mental disease of alcoholism).

Similarly, Plaintiff's status as a transgender individual alone does not confer standing upon him to sustain this lawsuit against Defendants. He must establish a concrete and particularized injury with a sufficient nexus to the acts or omissions by Defendants deemed unlawful under the applicable statute. *See Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 92 (3d Cir. 1999); *June Med. Servs. L. L. C. v. Russo*, 2020 WL 3492640, at *31 (U.S. June 29, 2020) ("[T]o establish an injury-in-fact a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.") (citation omitted). Although Conforti again tries to distance himself from his own allegations, *see* Opp. Br. at p. 21, he clearly alleges that the denial of the "medically necessary" surgery – a term used 21 times in the Complaint – constituted the unlawful act upon which his claims are predicated. *See* Mayer Decl., Exh. 1, at ¶¶ 88, 99. If Conforti did not suffer from sufficiently severe gender dysphoria, as explained by his own expert, then the surgery would not have been "medically necessary."[3]

Conforti's arguments that Defendants have belatedly raised the issue of medical necessity and should be precluded from exploring this issue at the discovery stage must be rejected. *See*

---

history of depression and psychological problems, characterized by her physician as 'post-traumatic stress' that predated her termination").

[3] In fact, Conforti's own proffered expert draws a distinction between "medically necessary" and "elective" surgeries and attributes the injuries that Conforti claims here (e.g., emotional distress, anxiety, depression, etc.) to the denial of the former and not the latter unless the elective surgery is unnecessarily delayed. *See* Mayer Decl., Exh. 18, ¶¶ 34-36 n. 7.

*Rega v. Beard*, 2010 WL 2404420, at *1 (W.D. Pa. June 10, 2010) ("Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial.") (citations omitted). Even if this Court were to give credence to such a nonsensical argument, which is the primary focus of Conforti's opposition brief, Defendants raised the prospect of a challenge to the purported medical necessity as soon as it became clear to defense counsel that the hysterectomy may not have been medically necessary to treat Conforti. *See* Defs.' Br. at pp. 3-4.

### III. Defendants Established Good Cause For The Rule 35 Examination.

Defendants have established "good cause" for the Rule 35 mental examination based upon the following: (1) the complex emotional and psychological history evidenced by Conforti's medical records; (2) the hasty diagnosis by Dr. Ian Tang and Batista of Conforti's psychological disorders; (3) Conforti's claim of ongoing emotional distress; and (4) Conforti's proffer of expert testimony on the issue of medical necessity and the psychological and mental injuries resulting from the denial of medically necessary treatment. *See* Defs.' Br. at pp. 25-28.

Conforti is unqualified to testify about these diagnosed disorders, *see* Mayer Decl., Ex. 2, 259:4-6, and even the cases cited by Conforti and Judge Waldor recognize that the fact alone that Defendants received medical records constitutes an insufficient basis to deny Rule 35 motion where discrepancies bearing directly on the issue of causation exist. *See Montana I*, 2013 WL1750002, at *14 (citing *Womack*, 205 F.R.D. 445 (E.D. Pa. 2001)). The same is true for Dr. Tang's and Batista's rushed and dubious diagnosis of Conforti's self-diagnosis of anxiety, depression, and gender dysphoria without any discerning analysis as to origin or extent. *See* Mayer Decl., Exh. 4, Batista Dep. at 48:6-21; *see also* Mayer Decl., Exh. 3, Tang Dep. at 218:4-9. Dr. Reeves's examination will not constitute a mere difference of opinion, as in *McLaughlin*

*v. Atl. City*, 2007 WL 1108527 (D.N.J. Apr. 10, 2007), relied upon by Judge Waldor, given the overt lack of detail in Dr. Tang's and Batista's diagnosis and treatment of Conforti. *Id.* at *4.

Furthermore, the proffered expert opinions show that Conforti's ongoing gender dysphoria, depression, and anxiety disorders will play a central role in the case. *See Eckman v. Univ. of R.I.*, 160 F.R.D. 431, 434 (D.R.I. 1994). Conforti attempts to distance himself from his own experts – by claiming that they did not assess him personally and that they will focus on irrelevant discrete issues – are unavailing. A common sense reading of the reports dictates that the expert testimony will indisputably focus on the severity of Plaintiff's gender dysphoria and the emotional and psychological effects of not receiving the total hysterectomy. *See*, *e.g.*, Mayer Decl., Exh. 17 at ¶ 23 and Exh. 18 at ¶¶ 44-45. Defendants should not have to accept Conforti's self-serving assertions that he will testify to his emotional distress in a "colloquial" manner when his own experts will address that precise issue.

### IV. Public Policy Does Not Outweigh Defendants' Right To Conduct The Examination.

As established herein, an independent mental examination is warranted and should not be precluded simply because he is transgender (Pl.'s Opp. at 22-23). This case hardly constitutes the "routine" discrimination case wherein a Rule 35 mental examination may be prohibited. The cases cited by Conforti echo this principle. *See Benham v. Rice*, 2007 WL 8042488, at *2 (D.D.C. Sept. 14, 2007) (acknowledging circumstances where Rule 35 motions are granted); *Cauley v. Ingram Micro, Inc.*, 216 F.R.D. 241, 244 (W.D.N.Y. 2003) (noting that hospitalization and treatment by physician places plaintiff's claim beyond a bare allegation of emotional stress typically associated with discrimination case). The requested mental examination is narrowly tailored to address Conforti's claimed emotional distress, including the cause and extent of his distress, as well as his claimed gender dysphoria and the impact on the dysphoria symptoms of the hysterectomy that he underwent at a different hospital. Conforti's fears that the examination

will somehow invade his privacy interests as a transgender individual is overcome by the narrowly tailored scope of the examination and the existence of the confidentiality and protective orders entered by the Court. *Cauley*, 216 F.R.D. at 244.

### V.     Dr. Reeves Is Qualified To Conduct The Examination.

Conforti's belated and invalid challenges to Dr. Reeves' qualifications must be rejected. *See Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D.Cal. 1995) ("Although the court is not required to accept defendants' proposed examiner as the examining psychologist, only if plaintiff raises a valid objection will the Court appoint a different examiner."). Any challenge to the qualification of Dr. Reeves, a licensed psychiatrist, should be raised following expert discovery, rather than through Judge Waldor's *sua sponte* premature treatment of the issue on a Rule 35 motion without affording Defendants the opportunity to supplement the record.

There should be no doubt that Dr. Reeves is qualified to perform the examination at issue. *See Jefferys v. LRP Publications, Inc.*, 184 F.R.D. 262, 263 (E.D. Pa. 1999); *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 511 (E.D. Cal. 2011) (The Advisory Notes to Rule 35 explain that the court has discretion to determine whether the proposed examiner is 'suitably licensed or certified,' but this descriptor does not necessarily mean board certification."). A board certified physician, such as Dr. Reeves, specializing in the subject matter to be explored at the examination (e.g., Conforti's diagnosed psychiatric conditions) is distinct from the situation in *Montana I* and *II*, *supra*, where the district court questioned the qualifications of the "workplace bully" expert. *See, e.g., Montana I*, 2013 WL 1750002, at *4. And unlike *Montana I* and *II*, this is hardly the situation where Dr. Reeves lacks any experience in dealing with transgender issues. Dr. Reeves has "written numerous peer-reviewed bibliographies and participated in countless lectures and conferences relating to the field of psychiatry," including "a statewide lecture for University Correctional Health Care clinicians

-11-

concerning the diagnosis and treatment of gender dysphoria." *See* Mayer Decl, Exh. 15, at ¶ 4. He also possesses extensive experience "in diagnosing and treating patients with mental disorders" and is familiar with the DSM and the DSM-5's definition of the condition known as "gender dysphoria." *Id.* at ¶ 5.  Therefore, Dr. Reeves is qualified to perform the examination.

## CONCLUSION

For the reasons set forth in Defendants' moving brief and above, Defendants respectfully request that this Court reverse Magistrate Judge Waldor's January 22nd and March 30th opinions and orders denying Defendants' request for Plaintiff to appear for a mental examination.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**
Attorneys for Defendants

By:  */s/ Christopher S. Mayer*
      Christopher S. Mayer
      Thomas F. Doherty

Dated: July 13, 2020